[933 NE2d 744, 907 NYS2d 145]

HOWARD HOFFMAN, Respondent, v PARADE PUBLICATIONS et al., Appellants.

Argued June 2, 2010; decided July 1, 2010

**POINTS OF COUNSEL**

*Proskauer Rose LLP,* New York City (*Elise M. Bloom* and *Aly-chia L. Buchan* of counsel), for appellants. I. The First Department decision erroneously expands the application of the New York City Human Rights Law and rejects the impact requirement in this context. (*Carney v Philippone,* 1 NY3d 333; *Matter of Antine v City of New York,* 14 Misc 3d 161; *Matter of Auditore v City of New York,* 14 Misc 3d 175; *Morrison v Budget Rent A Car Sys.,* 230 AD2d 253; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *People v Finley,* 10 NY3d 647; *Foley Bros., Inc. v Filardo,* 336 US 281; *Small v United States,* 544

US 385; *Shah v Wilco Sys., Inc.,* 27 AD3d 169; *Matter of Midland Ins. Co.,* 20 Misc 3d 488.) II. The First Department decision also erroneously expands the application of the New York State Human Rights Law and rejects the impact requirements in this context. (*Pearce v Manhattan Ensemble Theater, Inc.,* 528 F Supp 2d 175; *Iwankow v Mobil Corp.,* 150 AD2d 272.) III. Howard Hoffman's complaint fails to meet the necessary impact requirement; therefore, the trial court's decision dismissing his New York City Human Rights Law and New York State Human Rights Law claims should be reinstated. (*Pearce v Manhattan Ensemble Theater, Inc.,* 528 F Supp 2d 175; *Wahlstrom v Metro-North Commuter R.R. Co.,* 89 F Supp 2d 506; *Shah v Wilco Sys., Inc.,* 27 AD3d 169.)

*Cohen, Weiss and Simon LLP,* New York City (*James L. Linsey* and *Evan Hudson-Plush* of counsel), for respondent. I. The First Department correctly held that the trial court has subject matter jurisdiction to hear Howard Hoffman's State and City Human Rights Laws claims. (*Matter of Cahill v Rosa,* 89 NY2d 14; *Matter of United States Power Squadrons v State Human Rights Appeal Bd.,* 59 NY2d 401; *City of Schenectady v State Div. of Human Rights,* 37 NY2d 421; *New York Inst. of Tech. v State Div. of Human Rights,* 40 NY2d 316; *Matter of Walston & Co. v New York City Commn. on Human Rights,* 41 AD2d 238; *Rylott-Rooney v Alitalia-Linee Aeree Italiane-Societa Per Azioni,* 549 F Supp 2d 549; *Torrico v International Bus. Machs. Corp.,* 319 F Supp 2d 390; *Launer v Buena Vista Winery, Inc.,* 916 F Supp 204; *Shah v Wilco Sys., Inc.,* 27 AD3d 169; *Iwankow v Mobil Corp.,* 150 AD2d 272.) II. In any event, even if the court were to impose an "impact" requirement, Howard Hoffman felt the impact of his termination in New York City and State.

*Ritz Clark & Ben-Asher LLP,* New York City (*Miriam F. Clark* of counsel), *Melvin Radowitz,* Washington, D.C., *Laurie McCann, Asian American Legal Defense and Education Fund,* New York City (*Kenneth Kimerling* of counsel), *Disability Rights Education and Defense Fund, Inc.,* Berkeley, California (*Linda D. Kilb* of counsel), *Lambda Legal Defense and Education Fund,* New York City (*Natalie Chin* of counsel), and *National Women's Law Center,* Washington, D.C. (*Dina Lassow* of counsel), for National Employment Lawyers Association/New York and others, amici curiae. I. The Court should reject appellants' claim that nonresidents and noninhabitants of New York are barred from bringing claims under the State and City Human Rights Laws. (*Robins v Max Mara, U.S.A., Inc.,* 923 F Supp 460.) II. The

Court should affirm the lower court's rejection of the impact requirement. (*Lightfoot v Union Carbide Corp.*, 110 F3d 898; *Shah v Wilco Sys., Inc.*, 27 AD3d 169; *Schuler v Pricewater-houseCoopers, LLP*, 595 F3d 370; *Schuler v PricewaterhouseCoopers, LLP*, 514 F3d 1365; *Torrico v International Bus. Machs. Corp.*, 319 F Supp 2d 390.) III. The State and City Human Rights Laws should apply in cases both where a discriminatory decision is made in New York and where the impact of such a decision is felt in New York. (*Rylott-Rooney v Alitalia-Linee Aeree Italiane-Societa Per Azioni*, 549 F Supp 2d 549; *Williams v New York City Hous. Auth.*, 61 AD3d 62; *Ferrante v American Lung Assn.*, 90 NY2d 623.)

**OPINION OF THE COURT**

PIGOTT, J.

Defendant Parade Publications is the publisher of a nationally syndicated general interest magazine that is distributed in hundreds of American newspapers. Between 2002 and January 1, 2008, plaintiff Howard Hoffman—a resident of Georgia who worked with his assistant at Parade's office in Atlanta—served as a managing director for Parade's Newspaper Relations Group (NRG). His duties included developing and overseeing accounts relative to the inclusion of Parade in newspapers in 10 states primarily located in the south and southwest. Hoffman did not service any accounts in New York.

In October 2007, Randy Siegel, president and publisher of Parade, called Hoffman in Atlanta from Parade's New York City headquarters and advised Hoffman that the Atlanta office would be closed by year's end and that his employment was being terminated. Hoffman thereafter commenced this age discrimination action against defendants Parade Publications, Condé Nast Publications and Advance Publications, Inc., asserting that his termination violated the New York City Human Rights Law (NYCHRL) (*see* Administrative Code of City of NY § 8-101 *et seq.*) and the New York State Human Rights Law (*see* Executive Law § 290 *et seq.*).

Defendants moved to dismiss the complaint for, among other things, lack of subject matter jurisdiction. Hoffman opposed the motion, asserting that he attended quarterly meetings in New York City, that the NRG was managed from—and all corporate contracts were negotiated through—the New York City office, and that defendants' decision to terminate him was made and executed in New York City.

Supreme Court dismissed the complaint for want of subject matter jurisdiction, holding that neither the City nor State Human Rights Law applied to a plaintiff who does not reside in New York because the "impact" of defendants' alleged discriminatory conduct was not felt within those boundaries (see 2008 NY Slip Op 31892[U]). The Appellate Division reversed and reinstated the complaint, holding that an "out-of-jurisdiction" employee's allegation that a discriminatory decision to terminate was made in New York City, if established, is sufficient to demonstrate that New York has subject matter jurisdiction over the claims (65 AD3d 48, 56-57 [1st Dept 2009]). The Appellate Division certified to this Court the question whether its order reversing the judgment of Supreme Court was properly made. We answer the certified question in the negative and reverse.

Both the City and the State Human Rights Laws deem it an "unlawful discriminatory practice" for an employer to discharge an employee because of age (see Administrative Code of City of NY § 8-107 [1] [a]; Executive Law § 296 [1] [a]). The question raised on this appeal is whether nonresidents of the city and state must plead and prove that the alleged discriminatory conduct had an impact within those respective boundaries. We hold that the policies underpinning those laws require that they must.

Addressing Hoffman's City Human Rights Law claim first, it is clear from the statute's language that its protections are afforded only to those who inhabit or are "persons in" the City of New York. The law declares, among other things, that "prejudice, intolerance, bigotry, and discrimination . . . threaten the rights and proper privileges of [the city's] *inhabitants*," and that "[i]n the city of New York . . . there is no greater danger to the health, morals, safety and welfare of the city *and its inhabitants* than the existence of groups prejudiced against one another . . . because of their actual or perceived differences, including those based on . . . age . . . ." (Administrative Code of City of NY § 8-101 [emphasis supplied].) To combat these prejudices, the law created the City Commission on Human Rights to, among other things, "foster mutual understanding and respect among all persons *in the city of New York*" (Administrative Code § 8-104 [1] [emphasis supplied]). In addition to investigating complaints of discrimination (see Administrative Code § 8-105 [4] [a]), the commission is also charged with working with other municipal agencies in "developing courses of instruction . . . on

techniques for achieving harmonious intergroup relations within the city of New York" (Administrative Code § 8-105 [1]).

There is disagreement among state and federal courts concerning the territorial reach of the City Human Rights Law in circumstances where the alleged discriminatory conduct is against a nonresident who does not work in New York City. Some courts have concluded that a nonresident plaintiff may invoke the protections of the NYCHRL by merely alleging and proving that the discriminatory decision to terminate was made in the city (*see Hoffman v Parade Publs.*, 65 AD3d at 50; *Rohn Padmore, Inc. v LC Play Inc.*, 679 F Supp 2d 454, 465 [SD NY 2010] [nonresident plaintiff working in California need only show that the alleged discriminatory decision to terminate occurred in the city]).

Other courts have taken the view that the nonresident plaintiff must demonstrate that the alleged discriminatory conduct had an "impact" within the city (*see Shah v Wilco Sys., Inc.*, 27 AD3d 169, 176 [1st Dept 2005] [even if termination decision was made in the city, its impact on the plaintiff was felt outside the city]; *Pearce v Manhattan Ensemble Theater, Inc.*, 528 F Supp 2d 175, 184-185 [SD NY 2007] [same]; *Wahlstrom v Metro-North Commuter R.R. Co.*, 89 F Supp 2d 506, 527-528 [SD NY 2000]; *Duffy v Drake Beam Morin*, 1998 WL 252063, *11, 1998 US Dist LEXIS 7215, *32-33 [SD NY 1998]). Courts adopting the impact requirement have done so out of concern that merely focusing the inquiry on where the termination decision is made—as opposed to where the impact of that decision is felt—results in the expansion of the NYCHRL to cover any plaintiff who is terminated pursuant to a decision made by an employer from its New York City headquarters regardless of where the plaintiff works (*see Wahlstrom*, 89 F Supp 2d at 527-528, citing *Duffy*, 1998 WL 252063, *12, 1998 US Dist LEXIS 7215, *36).

We hold that the impact requirement is appropriate where a nonresident plaintiff invokes the protection of the City Human Rights Law. Contrary to Hoffman's contention, the application of the impact requirement does not exclude all nonresidents from its protection; rather, it expands those protections to nonresidents who work in the city, while concomitantly narrowing the class of nonresident plaintiffs who may invoke its protection.

The Appellate Division's rule that a plaintiff need only plead and prove that the employer's decision to terminate was made

in the city is impractical, would lead to inconsistent and arbitrary results, and expands NYCHRL protections to nonresidents who have, at most, tangential contacts with the city. Indeed, the permutations of such a rule are endless, and, although the locus of the decision to terminate may be a factor to consider, the success or failure of an NYCHRL claim should not be solely dependent on something as arbitrary as where the termination decision was made. In contrast, the impact requirement is relatively simple for courts to apply and litigants to follow, leads to predictable results, and confines the protections of the NYCHRL to those who are meant to be protected—those who work in the city (*see* Administrative Code of City of NY § 2-201 [defining the territory of the city as constituting the five boroughs, and declaring that the "jurisdictions and powers of the city are for all purposes of local administration and government . . . co-extensive with the territory . . . described"]).

For similar reasons, Hoffman's State Human Rights Law claim should also be dismissed. The Legislature enacted that law through its invocation of "the police power of [New York State] for the protection of the public welfare, health and peace *of the people of this state*" (Executive Law § 290 [2] [emphasis supplied]). The law declares that the State of New York "has the responsibility to act to assure that every individual *within* [New York State] is afforded an equal opportunity to enjoy a full and productive life," and that failure to afford equal opportunity "threatens the peace, order, health, safety and general welfare of the state and its *inhabitants*" (Executive Law § 290 [3] [emphasis supplied]).

The obvious intent of the State Human Rights Law is to protect "inhabitants" and persons "within" the state, meaning that those who work in New York fall within the class of persons who may bring discrimination claims in New York. Application of the "impact" requirement to State Human Rights Law claims achieves the same ends as is the case with its City counterpart, because it permits those who work in the state to invoke its protections. Therefore, we conclude that a nonresident must plead and prove that the alleged discriminatory conduct had an impact in New York (*see e.g. Pearce*, 528 F Supp 2d at 185; *Lucas v Pathfinder's Personnel, Inc.*, 2002 WL 986641, *2, 2002 US Dist LEXIS 8529, *4 [SD NY 2002]; *Duffy*, 1998 WL 252063, *12, 1998 US Dist LEXIS 7215, *36).

The State Human Rights Law's "extraterritorial" provision underscores defendants' argument that the law does not protect

a nonresident like Hoffman. Enacted in 1975, this amendment called for the application of the State Human Rights Law "to certain acts committed outside" New York (Executive Law § 298-a). The thrust of section 298-a is to "outlaw[ ] certain discriminatory practices committed outside New York State against New York residents and businesses" (Sponsor's Mem, Bill Jacket, L 1975, ch 662, at 9). Specifically, it protects New York residents, domestic corporations, and corporations doing business in New York from discriminatory acts committed outside the state (*see* Executive Law § 298-a [1]), and subjects New York residents and domestic corporations who commit an "unlawful discriminatory practice" against New York residents outside the state to almost all of the provisions of the law (Executive Law § 298-a [2] [excepting the application of the penal provisions]; *see* Mem of Exec Director of Law Rev Commn, Bill Jacket, L 1975, ch 662, at 22-23; *see also* Budget Rep on Bills, Bill Jacket, L 1975, ch 662, at 16). Under this statutory scheme, while New York residents may bring a claim against New York residents and corporations who commit "unlawful discriminatory practices" outside the state, the Legislature plainly has not extended such protections to nonresidents like Hoffman, who are unable to demonstrate that the impact of the discriminatory act was felt inside the state.

According to the complaint, Hoffman was neither a resident of, nor employed in, the City or State of New York. Nor does Hoffman state a claim that the alleged discriminatory conduct had any impact in either of those locations. At most, Hoffman pleaded that his employment had a tangential connection to the city and state. Therefore, Supreme Court properly dismissed Hoffman's age discrimination claims for want of subject matter jurisdiction.

Accordingly, the order of the Appellate Division should be reversed, with costs, the judgment of Supreme Court reinstated, and the certified question answered in the negative.

JONES, J. (dissenting). At issue is whether New York courts have subject matter jurisdiction over a nonresident plaintiff's claims against a New York employer for an alleged unlawful discriminatory practice that occurred in New York City. Plaintiff Howard Hoffman, a resident of Georgia, commenced this action under the New York City Human Rights Law (NYCHRL) and New York State Human Rights Law (NYSHRL) against his New York City employer, defendant Parade Publications, and others,

alleging that Parade terminated his employment because of his age. The complaint states the following. Hoffman maintained the company's Atlanta office—staffed by himself and an assistant. In performing his duties of developing and maintaining Parade's accounts in southern and southwestern states, Hoffman maintained constant communications with the New York City office, including personal visits to Parade's management in New York City. His supervisor and Parade's president and publisher were based in the New York City office. Additionally, the decision to discharge him was made and communicated to him from the New York City office. Because the alleged unlawful discriminatory act occurred in New York City by a New York City employer, I believe Supreme Court has subject matter jurisdiction over Hoffman's NYCHRL and NYSHRL claims of age discrimination. Accordingly, I respectfully dissent.

In promulgating the State's Human Rights Law, the Legislature

> "declare[d] that the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice [or] intolerance . . . not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants" (Executive Law § 290 [3]).

The purpose of the act is broad and appears to be threefold: to prevent discrimination against individuals within this state; to protect the inhabitants of this state from discrimination; and to protect the general welfare of this state by curbing unlawful discriminatory practices within the state. Section 297 (9) of the Executive Law provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages." Similarly, the NYCHRL (Administrative Code of City of NY § 8-101) states that "the existence of groups prejudiced against one another" based on, among other things, age, endangers "the health, morals, safety and welfare of the city and its inhabitants." Discrimination "menace[s] the institutions and foundation of a free democratic state" (*id.*). Under both Human Rights Laws, the discharge of an employee by an

employer because of his or her age is an "unlawful discriminatory practice" (*see* Executive Law § 296 [1] [a]; Administrative Code of City of NY § 8-107 [1] [a]).

Although neither act has a residency requirement to assert a claim, some New York State and federal courts have adopted a jurisdictional limitation applicable to nonresidents asserting NYCHRL and NYSHRL actions, requiring that the discriminatory act take place within the jurisdiction in question and the impact of such discriminatory conduct be felt within that jurisdiction (*see Pearce v Manhattan Ensemble Theater, Inc.*, 528 F Supp 2d 175, 184-185 [SD NY 2007]). However, these cases, upon which the majority relies, are wholly distinguishable from the case at bar. For example, in *Pearce*, the plaintiff, a resident of Idaho, alleged that New York defendants rescinded their oral agreement for her to act in a national tour. The District Court dismissed the plaintiff's NYCHRL and NYSHRL claims of disability discrimination. It noted that the complaint did "not specify whether any performances were expected to take place in New York State" and concluded that the plaintiff "failed to make the requisite allegation that the decision had an impact in New York City and State" (*id.* at 184). In *Wahlstrom v Metro-North Commuter R.R. Co.* (89 F Supp 2d 506, 527-528 [SD NY 2000]), the plaintiff's NYCHRL claim involved a sexual harassment allegation regarding an act that occurred in White Plains, New York. The court, characterizing White Plains as "well outside the borders of New York City," concluded that the act had no impact in New York City (*id.* at 527).

In *Duffy v Drake Beam Morin* (1998 WL 252063, 1998 US Dist LEXIS 7215 [SD NY 1998]), two plaintiffs asserted NYCHRL claims against their employer, alleging that the decision to fire them occurred in New York City. The plaintiffs worked in Melville, New York and Parsippany, New Jersey, respectively. Their immediate supervisors worked in those offices as well. There, the District Court concluded that an allegation that the decision to fire them occurred in the city "is insufficient to establish a violation of the [NYCHRL] when the employees affected by that decision did not work in New York City . . . [and were not] subject to any discriminatory conduct in New York City" (1998 WL 252063 at *12, 1998 US Dist LEXIS 7215 at *35-36). Also, in *Shah v Wilco Sys., Inc.* (27 AD3d 169 [1st Dept 2005]), the plaintiff, a resident of New Jersey, worked as a programmer for a New York City defendant, but was assigned to work on a project in Jersey City, New Jersey.

For several months, she worked only in Jersey City, and was fired at the client's office in Jersey City. Plaintiff commenced a NYCHRL action against the defendant. The Appellate Division, citing *Wahlstrom*, concluded that "the NYCHRL would not apply since its impact on her occurred in New Jersey" (*id.* at 176).

On the other hand, in *Tebbenhoff v Electronic Data Sys. Corp.* (2005 WL 3182952, 2005 US Dist LEXIS 29874 [SD NY 2005]), the plaintiff, a New Jersey resident, asserted NYCHRL and NYSHRL claims against his former employer. In that case, the plaintiff traveled through the Mid-Atlantic region as a salesperson, and worked from home for convenience. The plaintiff alleged to have maintained a "presence" in the New York City office. The District Court held that the "plaintiff's action [fell] within the jurisdictional bounds of the NYSHRL" because the decision to terminate and the termination occurred in New York (2005 WL 3182952 at *5, 2005 US Dist LEXIS 29874 at *14). As to the NYCHRL claim, the court took note of cases applying an impact rule, but permitted the plaintiff to proceed in his NYCHRL claim, reasoning, because the discriminatory act was committed within New York City, "his termination cannot be said to have had no impact within New York City" (2005 WL 3182952 at *6, 2005 US Dist LEXIS 29874 at *15).

Subsequently, in *Rylott-Rooney v Alitalia-Linee Aeree Italiane-Societa Per Azioni* (549 F Supp 2d 549 [SD NY 2008]), the plaintiff, a resident of Minnesota working out of the defendant's Minneapolis office, commenced NYCHRL and NYSHRL claims against her employer, alleging age discrimination. The complaint alleged that the plaintiff reported to the defendant's New York City office by phone and occasionally in person; attended work-related meetings in the New York office; and the decision to discharge her was made in New York and communicated to her while in New York. The District Court reviewed *Shah, Tebbenhoff* and other conflicting federal authority, as well as New York's long-arm jurisdiction over tortfeasors, and held that the Human Rights Laws should "apply *either* when the initial discriminatory act (for example, a termination) occurs in New York or when the original experience of injury, which occurs at the employee's workplace, is in New York" (*id.* at 554). It concluded that, because the termination occurred in New York, plaintiff "establish[ed] discrimination 'within' New York, even if . . . [plaintiff] felt the effects of this termination at her workplace in Minnesota" (*id.* at 554).

New York State and federal courts have, until now, tailored jurisdictional limitations to permit nonresident plaintiffs to

maintain NYCHRL and NYSHRL claims against employers and have reached reasonable results, despite the lack of clarity as to the appropriate rule. While the majority correctly asserts that a disagreement exists among state and federal courts concerning the jurisdictional parameters of the Human Rights Laws, the cases upon which it relies to impose the so-called "impact" rule involve plaintiffs alleging few, if any, instances of unlawful discriminatory practices occurring within New York City or State. Here, Hoffman asserts that he was managed from New York, the decision to terminate his position occurred in New York and he was informed of that decision via a telephone call from New York City. Hoffman additionally asserted that he went to New York City to negotiate retaining his employment with the president and publisher of Parade. He asserts age discrimination as the cause of his discharge, which is unlawful conduct in New York City and New York State. The Appellate Division below observed, and I agree, "that it would be contrary to the purpose of both statutes to leave it to the courts of other jurisdictions to appropriately respond to acts of discrimination that occurred here" (65 AD3d 48, 57 [2009]). In short, the "impact" rule—a rule that appears nowhere in the text of the Human Rights Laws—unnecessarily precludes New York courts from protecting individuals from discrimination within the city and state and handicaps the city and state from curbing such practices.

Accordingly, I would affirm the order of the Appellate Division and answer the certified question in the affirmative.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge JONES dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN and Judge CIPARICK concur.

Order reversed, etc.