15-1514-cv(L), 15-1562-cv(XAP)
Vangas v. Montefiore Medical Center

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

March Term, 2016

(Argued:  March 21, 2016                    Decided: May 19, 2016 )

Docket Nos. 15-1514-cv(L), 15-1562-cv(XAP)

_____

MIRELLE VANGAS, ALFREDO VANGAS, JR.,

Plaintiffs - Appellees - Cross-Appellants,

v.

MONTEFIORE MEDICAL CENTER, ELIZABETH BURNS, PATRICIA QUINN,

Defendants - Appellants - Cross-Appellees,

and

WAGEWORKS INC,

Defendant.

_____

Before:

JACOBS and HALL, Circuit Judges, and RESTANI, Judge.[*]

_____

Appeal from the judgment of the United States District Court for the Southern District of New York (Ramos, Judge) denying Defendants - Appellants - Cross-Appellees Montefiore Medical Center, Elizabeth Burns, and Patricia Quinn, judgment as a matter of law, a new trial, and relief from a final judgment, and dismissing certain claims of Plaintiffs - Appellees - Cross-

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Appellants Mirelle Vangas and Alfredo Vangas, Jr.  We find that the district court erred in refusing to grant judgment as a matter of law on the New York State Human Rights Law claim, but did not err in dismissing the New York City Human Rights Law claim or the Consolidated Omnibus Budget Reconciliation Act claims.  Accordingly, the order of the district court is **AFFIRMED** in part and **REVERSED** in part.

_____

ORIT GOLDRING, The Goldring Firm, New York, New York, <u>for Plaintiffs - Appellees - Cross-Appellants</u>.

RICHARD M. REICE (Ira J. Lipton and Marc A. Melzer, <u>on the brief</u>), Hoguet Newman Regal & Kenny, LLP, New York, New York, <u>for Defendants - Appellants - Cross-Appellees</u>.

_____

RESTANI, <u>Judge</u>:

Montefiore Medical Center ("MMC"), Elizabeth Burns ("Burns"), and Patricia Quinn ("Quinn") (collectively, "Defendants") appeal the district court's denial of their motion for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50, or alternatively for a new trial under Rule 59, or relief from the judgment under Rule 60(b)(6) on Mirelle Vangas's ("Vangas") New York State Human Rights Law ("NYSHRL") claim.  Vangas cross-appeals the district court's dismissal of her New York City Human Rights Law ("NYCHRL") claim and she and her husband, Alfredo Vangas Jr. (collectively, "Mr. and Mrs. Vangas"), cross-appeal the district court's dismissal of their Consolidated Omnibus Budget Reconciliation Act ("COBRA") claims.  The district court held that Defendants were not entitled to JMOL on the NYSHRL claim because Vangas had presented sufficient evidence to put MMC's refusal to accommodate Vangas's disability before the jury.  The district court further held that alleged errors in the jury instructions and summation did not warrant a new trial.  We hold that because

2

Vangas did not request a reasonable accommodation prior to her termination, the district court erred in denying Defendants' Rule 50 motion; accordingly, we reverse that decision and vacate the jury award on the NYSHRL claim. The district court separately dismissed Vangas's NYCHRL claim for lack of subject matter jurisdiction and denied Mr. and Mrs. Vangas's COBRA claims on the merits. Those decisions are affirmed.

**BACKGROUND**

MMC terminated Vangas when she was unable to work after exhausting her leave of absence under the Family Medical Leave Act ("FMLA"). Vangas brought claims against MMC, Quinn (her immediate supervisor), and Burns (the head of human resources for the Care Management Organization). Vangas alleged that Defendants violated the NYSHRL and NYCHRL by failing to accommodate her disability. Mr. and Mrs. Vangas also brought claims under COBRA alleging that MMC failed to properly send notification of their right to continued coverage under MMC's medical insurance plan.[1]

MMC hired Vangas in 1989, and at the time of her termination in 2010, Vangas worked as a utilization management analyst ("UMA") in Yonkers. During all relevant times of her employment, Vangas lived in Cornwall on Hudson, New York. As a UMA, Vangas performed patient "assessments" by speaking with them over the phone. Vangas accessed patient contact information and authorizations through databases on her work computer, including the Care-Enhanced Clinical Management Software ("CCMS") and Carecast.

On March 25, 2010, Vangas was diagnosed with cancer. After meeting with Quinn and

---

[1] Vangas also alleged violations of the New York Labor Law, arguing that MMC failed to notify her of the cancellation of her employee benefits within five days of her termination. The court granted JMOL to Vangas on that claim and no party appeals that decision.

3

Quinn's supervisor, Kathleen Byrne ("Byrne"), that same day, Vangas went on immediate leave. Vangas subsequently filled out FMLA forms, which informed her that during her leave she was to stay in contact with MMC and inform MMC if she would not be able to return to work as scheduled, and Vangas indicated on those forms that her three-month leave period would end in June 2010. The FMLA forms also indicated that Vangas would need to be medically cleared prior to returning to work. In June 2010, Vangas was hospitalized briefly after a complication due to her treatment. On June 14, 2010, Vangas's doctor filled out paperwork, setting a new expected return to work date of July 19, 2010. Thereafter, Vangas did not return to work as scheduled, but MMC unilaterally extended her leave. In July 2010, after Vangas did not return to work, Quinn and Byrne spoke with Burns. Thereafter, on or around July 22, 2010, they mailed Vangas a certified mail letter regarding her FMLA leave. Vangas testified that she received two notices that she had a certified mail letter, but did not retrieve the letter, which was returned unclaimed.

On August 3, 2010, Vangas's doctor indicated that she could return to work on August 30, 2010. The same day, Vangas spoke with Burns's assistant who informed her of the need to complete more FMLA paperwork.[2] In late August 2010, Vangas began experiencing new symptoms including blurred vision, headaches, dizziness, and facial swelling. On August 23, 2010, just one week prior to her revised return to work date, Vangas visited her doctor for an

---

[2] For purposes of this decision, we accept as true Vangas's testimony that although she was not yet medically cleared to work on that day, on August 5, 2010, she spoke with Quinn and requested to work from home. Vangas testified that certain supervisory personnel worked from home and had remote access to databases including CCMS. She further testified that Quinn stated she had no problem with Vangas working from home, but that Byrne "wouldn't go for that." J.A. 414.

4

MRI and ultrasound. At that appointment, Vangas's doctor filled out additional FMLA paperwork stating that the duration of her condition was "unknown." J.A. 1128.

Vangas spoke with Quinn about her new symptoms on August 26, 2010. On August 29, 2010, the day before she was supposed to return to work, Vangas called, left a voicemail message, and texted Quinn, telling her that she was not feeling well, would not be returning the next day, and was following up with doctors. Quinn did not respond. Vangas did not return to work August 30, 2010, and was terminated that same day. On August 31, 2010, in a conversation with Burns, Vangas conceded that she was not "medically cleared" for work. J.A. 441.

In ruling on Defendants' motion for summary judgment, the district court held that Vangas's statements on August 29, 2010, that she was not feeling well and would not be returning to work the next day, were a request for indefinite leave, as Vangas was unable to provide a return to work date. The district court concluded that requests for indefinite leave, as a matter of law, are not requests for reasonable accommodation under the NYSHRL. The court ruled, however, that material questions of fact existed as to whether Defendants failed to accommodate a reasonable request to work from home and as to the other claims. Thus, the case proceeded to a jury.

After the close of Vangas's case, both Defendants and Vangas moved for a "directed verdict" on the NYSHRL claims. The district court denied the motions and allowed the NYSHRL claim to proceed to a jury verdict. The jury found in Vangas's favor and awarded damages of $541,000. On April 3, 2015, the district court denied Defendants' post-trial renewed motion for JMOL under Federal Rule of Civil Procedure Rule 50 on the NYSHRL claim. The

district court also denied Defendant's motion for a new trial based on alleged errors in the jury instructions and summation under Rule 59(e) and denied relief from the judgment under Rule 60(b)(6). The district court granted, however, Defendants' alternative motion for a new trial pursuant to Rule 59(a), holding that a new trial would be awarded unless Vangas agreed to remittitur reducing damages to $440,000. Vangas subsequently agreed to the remittitur.

On appeal, Defendants contend that they were entitled to JMOL on Vangas's NYSHRL claim, arguing that Vangas's attorney was improperly permitted to suggest hypothetical accommodations not requested by Vangas. They further argue that the district court improperly permitted the jury to consider the feasibility of Vangas's alleged request to work from home, made at a time she was not cleared to work and was being accommodated with leave. Vangas responds that these matters were properly before the jury and it could infer from MMC's failure to engage in an interactive process that reasonable accommodation was refused. We reverse the district court's denial of Defendants' motion for JMOL on the NYSHRL as at the relevant time, no reasonable accommodation was possible.

Defendants also moved for a "directed verdict" at the close of Vangas's case on the NYCHRL claim. The district court dismissed Vangas's NYCHRL claim, holding that because Vangas neither worked nor lived in New York City, and her only contacts with the city were tangential, her termination had no impact in NYC. On appeal, Vangas argues that she did not need to feel the impact of her termination in NYC to trigger the protections of the NYCHRL; rather, it is sufficient that the patients she worked with felt the impact in NYC. We affirm the district court's dismissal of the NYCHRL claim.

The district court decided the COBRA claims as trier of fact. Testimony relevant to

6

those claims indicated that Mr. and Mrs. Vangas lived at 16 Wood Avenue, Cornwall-on-Hudson, New York 12520. Although the zip code was correct in the COBRA notices, the town was abbreviated to "Cornwallonhuds." MMC's Director of Benefits, Eileen Montalto, testified that MMC maintains a service agreement with WageWorks, Inc., an outside vendor to administer MMC's COBRA benefits. She testified that upon the termination of an employee, WageWorks is electronically sent a file relating to the employee and that within three to five days, WageWorks mails a letter to the employee setting forth the COBRA coverage. She further testified that the shortening of the town name was likely due to a character limit in the "town" field in the electronic system. Vangas testified that she did not receive the COBRA notices, but conceded that she received at least eighteen pieces of other mail with the town name similarly abbreviated, and even received mail without the zip code. Montalto testified that she could view electronically that WageWorks received Vangas's file on September 24, 2010, and mailed the COBRA notices on September 27, 2010. Defendants and Mr. and Mrs. Vangas moved for a "directed verdict" on the claims at trial, but the district court reserved decision on the COBRA claims until after post-trial briefing. Subsequently, on November 5, 2014, the district court dismissed the COBRA claims holding that even though the notices were improperly addressed, MMC had satisfied its duties under COBRA because the notices were reasonably calculated to reach Mr. and Mrs. Vangas. Mr. and Mrs. Vangas argue that because the notices were incorrectly addressed, MMC did not comply with COBRA's notice requirements. We affirm the dismissal of the COBRA claims.

**JURISDICTION AND STANDARD OF REVIEW**

7

The district court had federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.  We have jurisdiction over this appeal under 28 U.S.C. § 1291 because it is an appeal from a final order of the district court.  In reviewing the district court's grant or denial of a motion for JMOL, our review is de novo.  Stampf v. Long Island R.R. Co., 761 F.3d 192, 197–98 (2d Cir. 2014).  Following a bench trial, questions of law are reviewed de novo and factual determinations are reviewed for clear error.  United States v. Apple, Inc., 791 F.3d 290, 313 (2d Cir. 2015).

**DISCUSSION**

**I.  New York State Human Rights Law Claim**

A party is entitled to JMOL when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [opposing] party on that issue."  Fed. R. Civ. P. 50(a)(1).  We may set aside a jury's verdict "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against him."  Stampf, 761 F.3d at 197 (alteration in original).  In reviewing a Rule 50 motion, all credibility determinations and reasonable inferences of the jury are given deference and we may not weigh the credibility of witnesses.  Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008).

To succeed on her NYSHRL claim, Vangas needed to prove that:  (1) she had a disability; (2) MMC had notice of her disability; (3) with reasonable accommodation she could perform the essential functions of her job; and (4) MMC refused to make such accommodation.  See Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 94 (2d Cir. 2015).  In Jacobsen v. NY.C.

8

Health & Hospitals Corp., the New York Court of Appeals reiterated that the NYSHRL is to be interpreted in the light of the employee's request for a reasonable accommodation. 11 N.E.3d 159, 167 (N.Y. 2014). A "reasonable accommodation" is one which "permits an employee with a disability to perform in a reasonable manner the activities involved in the job and does not impose an undue hardship on the employer's business." Id. at 166 (internal quotation marks and alterations omitted). If, even with a reasonable accommodation, an employee is unable to perform the core duties of their job, the employee does not have a disability covered by the statute and the employer may take adverse employment action. Id. The relevant time for considering whether an employee is capable of performing the essential functions of the job is at the time the employer refused to accommodate the disability. Id. at 173.

At the time of her final request for leave and termination, Vangas was incapable of performing the essential functions of her job. She was not medically cleared to return to work and admitted that she could not do so. Therefore, at that time, the only possible accommodation was an extension of leave, as she was incapable of working, in any capacity, whether at home or in the office. Vangas did not request an extension of leave for a specific time period—she simply informed MMC that she was not feeling well, would not be returning to work on August 30, 2010, and could not give MMC a date for her return to work. The district court correctly interpreted these actions as requesting an indefinite leave extension, which as a matter of law is not a reasonable accommodation. Romanello v. Intesa Sanpaolo, S.p.A., 998 N.E.2d 1050, 1052 (N.Y. 2013) ("Indefinite leave is not considered a reasonable accommodation under the [NYSHRL]."); Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n.1, 338 (2d Cir. 2000).

9

Vangas relies on Graves v. Finch Pruyn & Co., to argue that her communications in late August 2010 amounted to a reasonable request to extend her leave. 457 F.3d 181, 186 (2d Cir. 2006). Graves, however, is readily distinguishable. In that case, the plaintiff requested "a couple of weeks" which the court interpreted to be a definite request after a six-month paid leave for two additional weeks for a particular purpose, which was to see a specialist doctor. Id. To hold that Vangas's vague statements were not an unreasonable request for indefinite leave would extend the Graves holding to the point where it would conflict with New York law. See Romanello, 998 N.E.2d at 1052 (holding that plaintiff's request for "a continued leave of absence to allow him to get better and return to work" where his return to work date was indefinite was an unreasonable request for indefinite leave). It is clear from the record that on August 29, 2010, when Vangas informed MMC that she would not be returning to work the next day, she had no idea how long she would be out of work or how long it would take to determine how long she would be out of work. Additionally, on August 23, 2010, just one week prior to her return to work date, her doctors could not speculate about how long a leave Vangas would need before returning to work, let alone opine as to the date of return. The duration of her condition was listed as "unknown." J.A 1128. In Graves, the court indicated that even the finite two-week extension might not be a reasonable accommodation and in future cases it would depend on the likelihood that the leave would enable the employee to return to work. 457 F.3d at 186 n.6. Here, there was no finite leave requested and it was unknown whether after an extension of leave Vangas would be able to return to work; her symptoms and prognosis were too uncertain.

As indicated, for our purposes here we accept as true Vangas's testimony that on August 5, 2010, she requested to work from home. Such request, however, does not preclude the entry of JMOL on her NYSHRL claim because the relevance of the request is negated by her decline in health and admission that she was not able to work by the end of August 2010. At the time of her request to work from home, Vangas was not medically cleared to return to work. Vangas never asserted that working from home would have been feasible after she developed new symptoms. Vangas would have needed an indefinite amount of leave at the end of August 2010, regardless of whether she was working from home or in the office at that point, and as discussed above, MMC did not violate the NYSHRL by refusing to provide indefinite leave. Thus, whether the request was made earlier in the month, and whether her essential job functions could have been performed remotely, were not material facts for the jury to resolve.

Thus, at the time of her termination, Vangas could not work and needed an extension of her already expired leave. She was unable to specify how much additional time she would need and requested an indefinite amount of time and her prior request to work from home was ultimately eclipsed by her decline in health. Accordingly, there was no reasonable request for accommodation that MMC declined to consider through an interactive process or otherwise. Because there was no reasonable accommodation requested that would have allowed Vangas to perform the essential functions of her job, MMC did not violate the NYSHRL in terminating Vangas and no reasonable juror could have concluded otherwise. The district court thus erred in refusing to grant JMOL on this claim and the district court's judgment is reversed as to the

11

NYSHRL claim.[3] See Stampf, 761 F.3d at 197. As we reverse on the Rule 50 motion for JMOL, it is not necessary to address Defendants' alternative arguments for a new trial or remittitur.

**II. New York City Human Rights Law**

The NYCHRL is intended to cover people "who work in the city."[4] Hoffman v. Parade Publ'ns, 933 N.E.2d 744, 747 (N.Y. 2010). The New York Court of Appeals has adopted an "impact" test for nonresident plaintiffs seeking recovery under the NYCHRL. Id. The court adopted the impact test because it is "relatively simple for courts to apply and litigants to follow, leads to predictable results, and confines the protections of the NYCHRL to those who are meant to be protected—those who work in the city." Id. Under the test, Vangas needed to demonstrate that her termination had an "impact" within NYC. Id.

Vangas has not satisfied the impact test because her only contacts with NYC are tangential. Vangas argues that the impact of her termination was felt in NYC because as a UMA, she spoke with patients in NYC on the phone and those patients were impacted when she no longer worked with them. These meager interactions with NYC residents do not rise to the level of those rejected in Hoffman. Id. at 745, 748 (affirming the dismissal of the case as lacking impact where the plaintiff attended quarterly meetings in NYC, was managed from NYC, where

---

[3] As MMC did not violate the NYSHRL, neither Quinn nor Burns can be liable for aiding and abetting such violation. Strauss v. N.Y. State Dep't of Educ., 805 N.Y.S.2d 704, 709 (N.Y. App. Div. 2005) ("Where no violation of the [NYSHRL] by another party has been established, we find that an individual employee cannot be held liable for aiding or abetting such a violation."); see also Benson v. Otis Elevator Co., 557 F. App'x 74, 77 (2d Cir. 2014) (summary order).

[4] The NYCHRL also purports to cover "inhabitants" of NYC. Hoffman v. Parade Publ'ns, 933 N.E.2d 744, 746 (N.Y. 2010) (citing Administrative Code of City of NY § 8-101). No party argues that Vangas is a NYC inhabitant.

12

all corporate contracts were negotiated through the NYC office and where the decision to terminate plaintiff was made and executed in NYC). Vangas worked in Yonkers, was supervised in Yonkers, was terminated in Yonkers, and does not allege that she ever went to NYC for work. Under the NYCHRL the impact of the employment action must be felt by the plaintiff in NYC. See Fried v. LVI Services, Inc., No. 10 Civ. 9308(JSR), 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011) ("[Plaintiff] must prove that the decision to terminate his employment impacted him in New York City.") (emphasis added), aff'd 500 F. App'x 39 (2d Cir. 2012). To hold otherwise, such that the NYCHRL would cover employees who work at call centers outside the city and whose only contacts with NYC are phone conversations with persons in the city, would broaden the statute impermissibly beyond those "who work in the city." That the patients Vangas communicated with lived in NYC did not affect her job in any way; their location was irrelevant. Accordingly, because Vangas's termination did not impact her in NYC, the district court properly dismissed the claim and we affirm.

### III. Consolidated Omnibus Budget Reconciliation Act

Under COBRA, an employer must notify a terminated employee of the right to elect continuing health coverage under the employer's group rate. See 29 U.S.C. § 1166(a). COBRA does not indicate how notice should be given, but other courts have held that the statute does not require that notices actually be received; rather, "so long as the administrator has sent the notice by means reasonably calculated to reach the recipient," the employer has made a sufficient good faith effort to comply with the statute. See Crotty v. Dakotacare Admin. Servs., Inc., 455 F.3d 828, 830 (8th Cir. 2006); see also Torres-Negrón v. Merck & Co., 488 F.3d 34, 45 (1st Cir. 2007); Thomas v. Town of Hammonton, 351 F.3d 108, 115 (3rd Cir. 2003); Degruise v. Sprint

13

Corp., 279 F.3d 333, 336 (5th Cir. 2002); Smith v. Rogers Galvanizing Co., 128 F.3d 1380, 1383 (10th Cir. 1997); see also Ramos v. SEIU Local 74 Welfare Fund, No. 01 Civ. 2700(SAS), 2002 WL 519731, at *5 (S.D.N.Y. Apr. 5, 2002); Hubicki v. Amtrak Nat'l Passenger R.R. Co., 808 F. Supp. 192, 196 (E.D.N.Y. 1992). We agree that this is the proper standard.

When an employer mails a COBRA notice to the covered employee's last known address, the notice is reasonably calculated and the employer is "deemed to be in good faith compliance with COBRA's notification requirements." Hubicki, 808 F. Supp. at 196; see also Degruise, 279 F.3d at 336, 337. Here, the incorrectly abbreviated town name on the COBRA notice does not render the notice invalid. MMC put forth evidence, through Montalto, that MMC has procedures in place to ensure COBRA notices are properly mailed. Montalto testified that she routinely sends an electronic file regarding terminated employees to WageWorks through MMC's benefits administrator. Then, within three to five business days, WageWorks mails a letter to the employee that explains COBRA coverage and the enrollment period. If the employee does not respond in sixty days, WageWorks sends notice that the employee is no longer eligible. MMC admitted into evidence a copy of both the letter notifying Vangas of her COBRA entitlement, and the letter explaining that she is no longer eligible. Montalto further testified that she saw on her computer system that WageWorks received Vangas's file on September 24, 2010, and that the first COBRA notice was mailed on September 27, 2010. MMC thus had adequate procedures in place to ensure COBRA notice delivery and presented sufficient evidence that those procedures were followed in this case. See, e.g., Ramos, 2002 WL 519731, at *5 (holding that the employer complied with its COBRA requirements in good faith where the employer provided evidence that it routinely sends out COBRA notices, that notice was sent to the

14

plaintiff's most recent address on file, and that their computer system indicated the date the notice was sent).

Vangas's arguments are unpersuasive. First, her reliance on the incorrectly abbreviated town name is insufficient as she admitted to receiving eighteen other pieces of incorrectly addressed mail, including mail without the zip code. Here, the zip code was correct and is the only zip code for Cornwall-on-Hudson. Second, the cases on which she relies do not compel a different result. See Crotty, 455 F.3d at 830–32 (reversing grant of summary judgment where the defendant failed to provide evidence that the letter was "printed out, placed in a properly addressed envelope, or sent through the mail"); Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104 (1st Cir. 2004) (reversing grant of summary judgment where the defendant merely submitted the notification letter into evidence with a note stating that it was sent through certified mail). Here, unlike the employers in those cases, Montalto testified that she saw the date the COBRA notification letter was mailed on her computer system.

MMC presented sufficient evidence of its procedures for ensuring COBRA notices are properly and timely mailed and that those procedures were followed in this case. The evidence established that MMC attempted to mail the notices to Mr. and Mrs. Vangas's last known address and were thus reasonably calculated to reach them. Mr. and Mrs. Vangas did not submit any evidence to show that the standard procedures were not followed in this case. Because, in the light of the entire record, the findings that MMC had proper procedures in place and those procedures were followed do not create a "definite and firm conviction that a mistake has been committed," they are not clearly erroneous. See Anderson v. City of Bessemer City, 470 U.S. 564, 573–74 (1985). Accordingly, we affirm.

## CONCLUSION

For the reasons discussed above, the decision of the district court is **AFFIRMED** in part and **REVERSED** in part.  Judgment shall enter for Defendants on the NYSHRL, NYCHRL, and COBRA claims.