22-1835
Diaz v. Miller

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of July, two thousand twenty-three.

PRESENT:
MICHAEL H. PARK,
WILLIAM J. NARDINI,
ALISON J. NATHAN,
*Circuit Judges.*

_____

Joseph Diaz,

*Petitioner-Appellant,*

v.                                                                  **22-1835**

Mark Miller, Superintendent of Green Haven Correctional Facility,

*Respondent-Appellee.*

_____

FOR PETITIONER-APPELLANT:          KATHARINE SKOLNICK (Robert S. Dean and Mark W. Zeno, *on the brief*), Center for Appellate Litigation, New York, NY.

FOR RESPONDENT-APPELLEE:          PAUL A. ANDERSEN (Yael V. Levy, David M. Cohn, Joshua P. Weiss, *on the brief*), *for* Darcel D. Clark, District Attorney for Bronx County, Bronx, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner Joseph Diaz was convicted in New York state court of first-degree manslaughter for killing a bystander during a shootout. At Diaz's jury trial, the state introduced crime scene evidence (including reports, diagrams, and photographs) prepared by, or based on materials prepared by, a Crime Scene Unit detective who was unavailable for cross examination. Diaz appealed his conviction to the Appellate Division, First Department, claiming that the crime scene evidence was testimonial and thus admitted in violation of his rights under the Sixth Amendment's Confrontation Clause. The First Department rejected his argument, concluding that the evidence was not testimonial, and, regardless, any error was harmless. Diaz filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied Diaz's petition but granted a certificate of appealability. This appeal followed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review the district court's denial of habeas relief de novo. *See LanFranco v. Murray*, 313 F.3d 112, 117 (2d Cir. 2002). "When a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief without first applying both the test this Court outlined in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993),] and the one Congress prescribed" in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Brown v. Davenport*, 142 S. Ct. 1510, 1517 (2022). Under *Brecht*, "habeas relief is not warranted unless, in light of the

2

record as a whole, the constitutional violation had substantial and injurious effect or influence in securing the defendant's conviction." *Perkins v. Herbert*, 596 F.3d 161, 175 (2d Cir. 2010) (cleaned up). Under AEDPA, a federal court should not grant habeas relief with respect to a claim "adjudicated on the merits" in state court, unless the state court's decisions—if any—as to both the constitutional error and the harmlessness of that error were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Brown*, 142 S. Ct. at 1520.[1]

The First Department unreasonably applied clearly established Supreme Court precedent in concluding that there was no Confrontation Clause violation. The First Department reasoned that the "crime scene evidence that defendant claims was admitted in violation of his right of confrontation was not testimonial, since it '[did] not link the commission of the crime to a particular person.'" Joint App'x at JA2-2 (alteration in original) (quoting *People v. John*, 27 N.Y.3d 294, 315 (2016)). In *Garlick v. Lee*, this Court determined that such reasoning "contradicts clearly established Supreme Court precedent" because the "Supreme Court has squarely rejected the argument that . . . reports that 'do not directly accuse [the defendant] of wrongdoing,' . . . are

---

[1] Diaz briefly argues that Respondent waived its request that the district court apply *Brown*'s two-part test, which expressly incorporates the AEDPA standard into the harmless-error inquiry. This is because, in Respondent's submissions before *Brown* was decided, Respondent "invoked *Brecht* and *Fry*, not any other standard." Petr's Br. at 30. But, as Diaz acknowledges, this Court has already held that AEDPA's standard of review is mandatory and cannot be waived. *See Eze v. Senkowski*, 321 F.3d 110, 120-21 (2d Cir. 2003). Moreover, as Respondent emphasizes on appeal—and Diaz does not contest—its opposition to Diaz's petition requested that the district court apply AEDPA deference to the state court's harmless-error analysis.

not testimonial." 1 F.4th 122, 136 (2d Cir. 2021) (alteration in original) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313-14 (2009)). *Garlick* also foreclosed Respondent's argument on appeal that the crime scene evidence is not testimonial because the "materials were routine, contemporaneous statements of observable fact" and contained "information [that] was recorded promptly and in accordance with a business duty." Resp's Br. at 15. "While a document kept in the regular course of business ordinarily may be admitted at trial despite its hearsay status, such a document may not be admitted without confrontation if 'the regularly conducted business activity is the production of evidence for use at trial.'" *Garlick*, 1 F.4th at 131 (quoting *Melendez-Diaz*, 557 U.S. at 321). Even if the crime scene evidence "contains only a contemporaneous, objective account of observable facts that does not accuse a defendant, it is testimonial and the Confrontation Clause requires that the defendant be afforded the opportunity to cross-examine the declarant." *Id.* at 136 (cleaned up). So, just as in *Garlick*, the First Department's "conclusion contradicts clearly established Supreme Court precedent." *Id.*

Nevertheless, we agree with the district court's conclusion that Diaz failed to show that the First Department's conclusion that the error was harmless was erroneous under AEDPA's deferential standard of review. Following *Brown*, if the last reasoned state-court decision held that an error was harmless, a federal court cannot grant habeas relief unless it concludes that the state court's harmlessness analysis was "'contrary to' or an 'unreasonable application of'" Supreme Court precedent. *Brown*, 142 S. Ct. at 1520 (quoting 28 U.S.C. § 2254(d)). So Diaz must show that "no fairminded jurist" applying Supreme Court precedent "could reach the state court's conclusion" that admitting the crime scene evidence was harmless. *Id.* at 1525 (cleaned up). Diaz cannot meet this demanding standard.

4

To determine whether a Confrontation Clause violation was harmless we consider "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). This inquiry "depends upon a host of factors," including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* Here, a fairminded jurist could find that a number of these factors support the First Department's finding of harmlessness.

For example, the crime scene evidence could reasonably be considered cumulative of other properly admitted, corroborating evidence. Diaz argues that admission of the crime scene evidence "was all that linked the shooter at the corner to the bullet that killed Ms. Santiago" by establishing that there was only one shooter on the corner of Willis Avenue and 146th Street. Petr's Br. at 36; *see also id.* at 34. But there was substantial corroborating evidence on this point. Specifically, three testifying eyewitnesses—Orlando Soto, Michael Jones, and Susana Castro—described only one shooter on the corner firing in the direction of Santiago. While the witnesses did not agree on the identity of the lone shooter, Soto, Jones, and Castro all suggested that there was only one shooter firing towards Santiago.[2] *See Perkins*, 596 F.3d at 178 (improperly admitted evidence constituted "significant evidence of guilt" and was "important to the prosecution's case," but was

---

[2] The crime scene evidence was also used to demonstrate that Castro's identification of the shooter as Jason Irrizary was unreliable because she had an obstructed view of the shooter. But Castro's obstructed view was also corroborated by her own testimony that she threw herself on the ground between cars, put her head down, and looked at the street once the shooting began.

5

nevertheless harmless because it was "merely cumulative of the properly admitted evidence" (internal quotation marks omitted)).

The prosecution's case that Diaz was the lone shooter was also quite strong. Soto testified that he saw and heard only one gun among the group of men facing Santiago, and he was "sure" the shooter was wearing a red shirt—the shooter Castro identified, Irrizary, was wearing a white shirt on the day in question. Soto also identified Diaz as the shooter in a lineup the day after the shooting. Jones's testimony tends to corroborate Soto's account. He observed a man in a red shirt near the corner of Willis Avenue and 146th Street holding a gun in front of himself. Jones further testified that the person in the red shirt passed his gun off to a person in a white shirt. This observation was corroborated by surveillance video footage, and Jones identified Diaz as the shooter in a photo array five days after the shooting and at trial.

Ultimately, as Diaz argued during closing, the central question of the trial was "basically one of identity." State Trial Tr. at 895. In convicting Diaz, the jury credited the two eyewitnesses who identified him as the shooter over the one eyewitness who did not. It was not unreasonable for the state court to conclude that this issue of identification was the lynchpin of the jury's verdict and that a "fully realized" and "damaging" cross-examination of the unavailable detective who created the crime scene diagram would have been essentially irrelevant to this issue. *Van Arsdall*, 475 U.S. at 684. To be sure, the state relied on the crime scene evidence throughout trial, including during witness examinations and closing statements. But in light of the other evidence introduced at trial and the limited relevance of the crime scene evidence to the core dispute over competing eyewitness testimony, we cannot say that *no* fairminded jurist applying Supreme Court precedent could reach the First Department's harmlessness conclusion. Diaz thus fails to satisfy his burden

6

under AEDPA.[3]  We have considered all of the parties' remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Since Diaz is unable to meet the AEDPA standard, we need not determine whether he can satisfy *Brecht.  See Brown*, 142 S. Ct. at 1527.