# United States Court of Appeals
## For the First Circuit

No. 18-1302

YURY RINSKY,

Plaintiff, Appellee,

v.

CUSHMAN & WAKEFIELD, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Barron and Selya, Circuit Judges,
and Katzmann,* Judge.

Sawnie A. McEntire, with whom Benjamin M. McGovern, Holland
& Knight LLP, Ralph T. Lepore, III, Paula D. Taylor, and Parsons
McEntire McCleary PLLC were on brief, for appellant.
Mark D. Szal, with whom Szal Law Group LLC, John W. Dennehy,
and Dennehy Law were on brief, for appellee.

March 8, 2019

    * Of the United States Court of International Trade, sitting
by designation.

**KATZMANN**, <u>Judge</u>.    In this diversity action, Appellee Yury Rinsky ("Rinksy"), a citizen of Massachusetts, brought suit against his former employer, the New York-based real estate firm Cushman & Wakefield, Inc. ("C&W"), claiming that C&W impermissibly fired him because of his age and disability.  C&W removed Rinsky's suit from the Massachusetts Superior Court to the United States District Court for the District of Massachusetts ("district court") in Boston, which applied the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101–107.  The jury then found that C&W discriminated against Rinsky on the basis of age and awarded him $1,275,000, comprised of $425,000 in compensatory damages and $850,000 in punitive damages.  C&W appeals from this verdict, arguing that the NYCHRL was inapplicable, that the district court judge incorrectly instructed the jury, and that there was insufficient evidence to support the jury's verdict. After navigating through the issues, including a question requiring us to make an informed prophecy about how the highest court in New York would define the burden of proof for punitive damages in a NYCHRL claim, we affirm.

**I.**

**A. Evidence at Trial.**

Rinsky began working as a senior systems analyst for C&W's New York City office in 1988.  Between 2009 and 2015, Rinsky worked as a software engineer for the company's AS/400 computer

system.  Beginning in 2012, he worked three to four days a week remotely from his home in New Jersey and spent the remainder of the work week in the New York City office.  Rinsky also occasionally worked remotely while visiting his daughter in Boston.  Rinsky received performance reviews of "exceeds expectations" and "excellent" throughout his 27-year tenure with C&W.

In December 2014, Rinsky and his wife purchased a home in Winchester, Massachusetts.  Rinsky testified at trial that he did not initially intend to move there right away, but rather that he and his wife planned to retire there in a few years to be closer to their daughter and grandchild.  In March 2015, Rinsky's broker listed his home in New Jersey for sale.  Rinsky learned that same month that his boss, Colin Reid, was transferring to the Miami office.  Rinsky testified that he then decided to ask Reid about the possibility of transferring to the Boston office, and that when he raised the question, Reid replied that they would "have plenty of time to talk about it later."

Rinsky then received an offer on his New Jersey home.  The offer included the following lease-back provision: "Sellers will have the option to lease the house back at the lease market value until buying another property."  Rinsky called Reid to inform him of the offer and again inquired about the possibility of transferring to the Boston office.  During the phone call, Reid

- 3 -

approved of Rinsky's transfer to Boston but said he needed to check with his boss, Andrew Hamilton. Reid also noted that Rinsky primarily worked remotely anyway. A few days later, Rinsky asked Reid about Hamilton's response, but Reid informed Rinsky that he had not yet talked to Hamilton about his transfer request. Rinsky testified that a few days later, however, Reid told him that he had spoken with Hamilton, that Hamilton said that he knew that Rinsky "handle[s] most of the work on the AS/400, and he ha[d] no problem for [Rinsky] to work out of the Boston office," and that the Chief Information Officer would be in touch about arranging a cubicle for Rinsky in Boston.

Reid disputed Rinsky's timeline at trial and testified that the first he had heard of Rinsky's relocation was April 30, 2015. He testified that he told Rinsky that the transfer request would need to go through a process, requiring approvals from three other company managers, and warned Rinsky that his own transfer had taken months.

On May 14, Hamilton sent Reid a meeting request to "discuss the situation Yury has put us in with his home purchase in Boston." On Sunday, May 17, Rinsky emailed Reid:

> As discussed I will be moving to Boston on 5/27/2015 for family reasons and need to take 4 personal days after Memorial Day (5/26 – 5/29). I am confident that I can continue to work to the best of my ability remotely. I look forward to sitting down with you and coming up with an arrangement that benefits all involved. Thanks.

Reid replied, "Ok, we will talk on Tuesday."

Hamilton emailed his boss and senior managing director, Leif Maiorini, on May 27 with six steps to replace Rinsky, including hiring a new employee, retaining Rinsky for about nine weeks for knowledge transfer, and working with the Human Resources manager on Rinsky's exit. Later that same week, Rinsky began working remotely from his Winchester, Massachusetts home. On June 2, a C&W employee emailed Rinsky to ask if he would need his desktop in Boston, to which Rinsky replied, "I will need my desktop in a couple of weeks when I get a cubicle in [the] Boston office." Reid replied, "Pls [sic] wait until I am back in NY tomorrow. Yury might be getting new equipment for Boston, since I have an AS400 consultant sitting there next week." Rinsky continued to work remotely from his Massachusetts home.

Over the next three weeks, senior management exchanged several emails regarding Rinsky's position, his move to Boston, and the need to terminate him. On June 15, Maiorini emailed Hamilton and Reid to say, "we need to move forward with Yuri's [sic] termination as quickly as possible. The position that Yuri [sic] fills is located in NYC. Given that he left without notifying his manager or HR is unacceptable and we need to take action as [sic] quickly." The next day, the Human Resources manager emailed Hamilton and Reid sample resignation language to share with Rinsky. On Monday, June 22, Hamilton and Reid called

Rinsky and asked him to report to New York City for work five days a week, beginning the next day, or, in the alternative, to resign from his position. Rinsky protested, sending emails to senior management in which he explained that he believed his job transfer to Boston had been approved. After Rinsky opted not to resign, C&W terminated him on July 10.

Rinsky was 63 years old when he was terminated, and C&W replaced him with an approximately 48-year-old employee. Hamilton and Maiorini were in their forties, while Reid was 61 years old. C&W also treated the request for a transfer of another employee differently from the way it treated Rinsky's request. In May 2015, another C&W employee, Jay Leiser,[1] moved to Florida. C&W allowed him to work remotely from Florida part of the week and in person in the New York City office the rest of the week. After six months, C&W approved a full-time transfer to Florida.

**B. Background and Procedural History.**

On January 15, 2016, Rinsky, then living in Winchester, Massachusetts, filed a complaint in Massachusetts Superior Court, asserting claims against his former employer, C&W, for age discrimination and disability discrimination, both in violation of

---

[1] Neither party cites Leiser's exact age. In closing argument, C&W acknowledged that Leiser was younger than Rinsky, and in his brief before this Court, Rinsky also indicated that Leiser was younger than he.

Mass. Gen. Laws ch. 151B[2], promissory estoppel/detrimental reliance, fraudulent representation, and negligent representation. Mass. Gen. Laws ch. 151B, § 9 allows for recovery of "actual and punitive damages" and "award[s] the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust." "[P]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Dartt v. Browning-Ferris Indus., Inc. (Mass.), 691 N.E.2d 526, 537 (Mass. 1998) (quoting Restatement (Second) of Torts § 908(2) (1979)). Such damages "are appropriate 'where a defendant's conduct warrants condemnation and deterrence.'" Id. at 536 (quoting Bain v. Springfield, 678 N.E.2d 155, 162 (Mass, 1997)). In age discrimination cases, Mass. Gen. Laws ch. 151B, § 9 provides that the court must double and may treble actual damages "if the court finds that the act or practice complained of was committed with knowledge or reason to know" that there was a violation.

Noting that Rinsky was a citizen of Massachusetts, C&W was a corporation organized under the law of the state of New York,

---

[2] As required by the Massachusetts exhaustion scheme, see Goldstein v. Brigham & Women's Faulkner Hosp., Inc., 80 F. Supp. 3d 317, 323 (D. Mass. 2015), prior to filing suit under Mass. Gen. Laws ch. 151B in Superior Court, Rinsky first filed an administrative complaint with the Commonwealth of Massachusetts Commission Against Discrimination ("MCAD") and waited the requisite 90 days before suing upon his claim.

with a principal place of business in New York, and the amount in controversy exceeded $75,000, C&W removed the case on diversity grounds to the federal district court. As required by 28 U.S.C. § 1446(a), the complaint served on C&W in the state court action was attached to the Notice of Removal. The complaint was not repleaded in federal court. The case proceeded to discovery under Massachusetts law. C&W moved for and was denied summary judgment under Massachusetts law. The district court then ordered briefing on whether Massachusetts or New York law should apply.

Citing the Massachusetts "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole," C&W argued that New York law should apply because New York "has the most significant relationship" to the case. See Bushkin Assocs. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985); City of Haverhill v. George Brox, Inc., 716 N.E.2d 138, 144 (Mass. App. Ct. 1999). According to C&W, Massachusetts was only connected to the case because the plaintiff moved there on his own accord. Moreover, the termination took place in New York and was the key event that engendered this suit. C&W represented that the New York counterpart to the Massachusetts discrimination statute (Mass. Gen. Laws ch. 151B) pleaded by Rinsky in the underlying complaint was the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–296. In relevant part, that statute prohibits

discrimination in employment on the basis of "age . . . [or] disability." Id. at § 296(a). To prevail in an action, a plaintiff must show that "age was the 'but-for' cause of the challenged adverse employment action." See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (stating that claims under the NYSHRL are "identical" to claims brought under the more stringent stands of the federal Age Discrimination in Employment Act, id. at 105 n.6); Douglas v. Banta Homes Corp., No. 11 Civ. 7217, 2012 WL 4378109, at *3 (S.D.N.Y. Sept. 21, 2012) (stating that, for claims under the NYSHRL, a plaintiff must meet a heightened standard of proving that "age was the 'but-for' cause of the challenged adverse action [and] [i]t is insufficient for the plaintiff to prove simply that age was 'one motivating factor' in the decision" (quoting Colon v. Trump Int'l Hotel & Tower, No. 10 Civ. 4794, 2011 WL 6092299, at *5 (S.D.N.Y. Dec. 10, 2011))). C&W noted that, unlike the Massachusetts statute, the NYSHRL does not provide for punitive damages or for an award of fees.

Rinsky responded that the statute most analogous to the Massachusetts statute was the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., which expressly provides for recovery of uncapped compensatory damages, including punitive damages and attorneys' fees for claims of age and disability discrimination. Specifically, the NYCHRL provides that persons aggrieved by unlawful discriminatory practices "shall have a cause of action in

any court of competent jurisdiction for damages, including punitive damages." N.Y.C. Admin. Code § 8-502(a). To succeed, a plaintiff must meet a lesser standard than that required by the NYSHRL; age need only be "one motivating factor" or a "substantial factor" for the adverse employment action. See Russo v. N.Y. Presbyterian Hosp., 972 F. Supp. 2d 429, 455-56 (E.D.N.Y. 2013) (citing Brightman v. Prison Health Serv., Inc., 970 N.Y.S.2d 789, 792 (App. Div. 2013)). The NYCHRL further provides that "the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs." N.Y.C. Admin. Code § 8-502(g). Rinsky noted that "the viability of the punitive damages and attorney's fees provisions of the City Human Rights Law [is] not affected in any way by the State Human Rights Law." Grullon v. S. Bronx Overall Econ. Dev. Corp., 712 N.Y.S.2d 911, 917 (N.Y. Civ. Ct. 2000).

The district court ruled that:

> [a]fter reviewing the parties' supplemental briefing [ECF Nos. 45, 46], the Court concludes that New York law applies to this case, and that New York law does not permit Plaintiff to bring common-law claims for fraudulent or negligent misrepresentation or promissory estoppel. The Court further concludes that Plaintiff may bring his discrimination claims pursuant to the New York City Human Rights Law, Admin. Code of City of New York § 8-101 et seq., which provides for the recovery of punitive damages and attorneys' fees. Therefore, the Court will allow Plaintiff to introduce evidence of damages in accordance with this statute. The parties

- 10 -

are granted leave to supplement their proposed jury instructions.[3]

The district court also determined that the NYCHRL, which provides for punitive damages, was analogous to the initially pleaded claims under Massachusetts law. In short, with the dismissal of Rinsky's common law claims, what remained for the jury was consideration of the age and disability discrimination claims pursuant to the NYCHRL.

The morning of the commencement of the trial and delivery of opening statements by counsel, just as the evidence was about to be introduced, C&W's counsel stated to the court:

> I don't think this particular point has been made clear. C&W objects to the New York City Human Rights Law being applied. I know it's in Your Honor's order from last Friday. Our position on this is what was pled was state law claims. [Rinsky] availed himself of the MCAD. He availed himself of M.G.L. 151B. These are state law claims. There is a New York counterpart to M.G.L. 151B, and that is the New York State Human Rights Law. And our position is although Your Honor has already ruled on this, it would be the state law claims that would be the analog to the Massachusetts claims that have been pled.

The court replied: "Okay. That wasn't clear. So thank you."

Following a five-day trial, the jury returned its verdict. Although Rinsky did not prevail on his claim of disability discrimination, the jury found in his favor on his age

---

[3] "A federal court sitting in diversity applies state substantive law. To determine the applicable substantive law, the federal court applies the choice-of-law principles of the forum state, here Massachusetts." Levin v. Dalva Bros., Inc., 459 F.3d 68, 73 (1st Cir. 2006) (citations omitted).

discrimination claim, awarding $425,000 in compensatory damages and $850,000 in punitive damages. After the verdict was rendered, C&W filed, pursuant to Federal Rule of Civil Procedure 50(b), a renewed motion for judgment as a matter of law ("JMOL"), in which it argues that the evidence was legally insufficient to find that age or disability discrimination was a motivating factor in Rinsky's termination. C&W also moved for a new trial, pursuant to Federal Rule of Civil Procedure 59(a), on the age discrimination claim. The district court denied C&W's post-trial motions. C&W timely filed an appeal with this court.

**C. Jurisdiction.**

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(a) because the controversy is between citizens of different states and the amount in controversy exceeds $75,000. We have jurisdiction over the appeal of the district court's final order under 28 U.S.C. § 1291.

## II.

C&W argues that the district court impermissibly applied the NYCHRL because the impact of Rinsky's termination was felt in Massachusetts, not New York City, as would be required for the protections of the NYCHRL to apply; that the district court improperly instructed the jury; and that there was insufficient evidence to support the jury's verdict. We discuss each issue in turn.

- 12 -

**A.    Applicability of the NYCHRL.**

On appeal, C&W launches two separate challenges to the applicability of the NYCHRL.  Neither is meritorious.

**1.    Pleading.**

C&W argues on appeal that Rinsky waived his NYCHRL claim "by failing to plead a city-based cause of action (or amend his pleadings in order to do so) at any point during the proceedings below."  We conclude that this claim has not been preserved for appellate review and that in any event it fails on the merits.

At the outset, we note that the NYCHRL claim is in the case only because after C&W removed the action from Massachusetts state court to federal court, C&W requested that the district court apply New York rather than Massachusetts law.  Rinsky's complaint under Massachusetts law raised the issue of age discrimination and punitive damages, the pleadings and proceedings made C&W aware of the issues in dispute, and the parties discussed the NYCHRL prior to trial.  As we have detailed, supra pp. 10-11, the district court acceded to C&W's request to apply New York law and then concluded that -- as a choice of law matter -- the analogous New York law claim was one based on NYCHRL, which like Massachusetts law, offered the potential for punitive damages.  We have also noted that after trial was under way, C&W merely objected to the district court's decision to apply the city-based cause of action, without providing any explanation or case law for why that decision was

wrong. We have "repeatedly warned litigants that 'arguments not made initially to the district court cannot be raised on appeal.'" DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001) (quoting St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp., 26 F.3d 1195, 1205 (1st Cir. 1994)). "Simply noting an argument in passing without explanation is insufficient to avoid waiver." Id. (citing McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991)). "A party must 'provide . . . analysis. . .' or 'present . . . legal authority directly supporting their thesis.'" Id. (quoting McCoy, 950 F.2d at 22). Thus, because C&W failed in the district court to "meet [its] 'duty to spell out . . . arguments squarely and distinctly[,]'" any challenge to the decision to apply the NYCHRL as a result of its choice of law analysis is waived. Id. (quoting McCoy, 950 F.3d at 22 (finding that two sentences plus one case citation were insufficient to avoid waiver)). For the same reasons, C&W's post-trial contention, made in a footnote without argument or authority, that Rinsky forfeited his ability to pursue a NYCHRL claim because his original complaint did not include a cause of action under an unidentified Massachusetts city ordinance, must also be deemed waived.[4] See DiMarco-Zappa, 238 F.3d at 34. As the district court observed: C&W "has never raised this point before, and does not explain what principle would allow

---

[4] The district court noted that "no such statute exists in Winchester, where [Rinsky] resides[]."

- 14 -

it to do so for the first time in a post-trial motion. Simply appending an otherwise-waived argument to a jurisdiction argument is not enough." We agree.

C&W's pleading claim also fails on the merits. The Federal Rules of Civil Procedure govern an action once it is removed from the state court. Fed. R. Civ. P. 81(c)(1). See generally 14 James Wm. Moore et al., Moore's Federal Practice – Civil § 81.04 ¶ 3 (2018). "A fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to afford the opposing party fair notice of the claims asserted against him and the grounds on which those claims rest." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1171 (1st Cir. 1995). Under the circumstances of this action removed by C&W, with fair notice of the claim and issues provided to C&W as mandated by Federal Rule of Civil Procedure 8(a)(2),[5] Rinsky was not required to newly plead the NYCHRL claim.

We also note that Federal Rule of Civil Procedure 81(c)(2) provides that "[a]fter removal, repleading is unnecessary unless the court orders it." See Moore, § 81.04 ¶ 4(a); Freeman v. Bee Machine Co., 319 U.S. 448, 452 (1943) ("District courts . . . [have] the power to permit a recasting of pleadings or

---

[5] Federal Rule of Civil Procedure 8(a)(2) requires that a complaint "must contain a short and plain statement of the claim showing that the pleader is entitled to relief."

- 15 -

amendments to complaints in accordance with the federal rules."). "[F]ederal courts will accept, as operative, papers served in state court which satisfy the notice-giving function of pleadings under the Federal Rules of Civil Procedure." Frank B. Hall & Co., Inc. v. Rushmore Ins. Co., 92 F.R.D. 743, 745 (S.D.N.Y. 1981); see also Istituto Per Lo Sviluppo Economico Dell'Italia Meridionale v. Sperti Prods., Inc., 47 F.R.D. 310, 313 (S.D.N.Y. 1969) (rejecting defendant's objection to lack of a formal complaint since plaintiff "supplied the defendant with more details than it could possibly hope to obtain from a formal complaint" and defendant was "fully able to raise any objections and defenses" to plaintiff's claims). That said, "[i]t would not serve the interests of justice . . . to redeem a totally unpleaded, unlitigated claim in circumstances that threaten significant prejudice to a defendant." Rodriguez, 57 F.3d at 1171.

Here, contrary to C&W's assertions, the NYCHRL claim was not an unlitigated claim "tease[d] [] out of adduced facts." Id. On these facts, C&W has shown no prejudice arising out of the failure to replead, nor can it assert successfully that it was denied notice of what claim was being litigated. Although it would have been advisable as a matter of "clean" litigation practice for

the district court to have ordered repleading, repleading was not required here.[6]

## 2. Justiciability.

C&W alleges that the district court improperly concluded that the NYCHRL applied to Rinsky's claims because he lived and worked in Massachusetts at the time C&W terminated him, and thus the impact of the adverse employment decision was not felt in New York City. Therefore, according to C&W, the district court lacked subject matter jurisdiction. We are unpersuaded by C&W's contentions.

### a. Basic Concepts.

At the outset, we note that C&W confuses the very different concepts of subject matter jurisdiction and justiciability. "[T]he question whether a district court has subject matter jurisdiction over a dispute, as a general matter, is substantively different from the question whether a district court has, or has acquired, the power to adjudicate a particular dispute." AEP Energy Servs. Gas Holding Co. v. Bank of America, 626 F.3d 699, 720 (2d Cir. 2010). "It is well-settled that subject

---

[6] The court, in its "Memorandum and Order Denying Defendant's Post-Trial Motions," stated that had C&W raised the issue in a timely fashion, "the Court would have entertained a motion to amend the complaint . . . Allowing Plaintiff to amend the complaint would have been appropriate once the Court determined, at Defendant's behest, that New York law applied, and such an amendment would not have prejudiced Defendant."

matter jurisdiction 'concerns a court's competence to adjudicate a particular category of cases.'" Id. (quoting Wachovia Bank v. Schmidt, 546 U.S. 303, 316 (2006)); see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 643 (2002) (noting that subject matter jurisdiction refers to "the courts' statutory or constitutional power to adjudicate the case" (quoting Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted)). Subject matter jurisdiction "poses a 'whether[]' . . . question: Has the Legislature empowered the court to hear cases of a certain genre?" Schmidt, 546 U.S. at 316. Cf. Arbaugh v. Y & H Corp., 546 U.S. 500, 511 (2006) (condemning the use of "'drive-by jurisdictional rulings'" that conflate a federal court's subject matter jurisdiction with "the question whether the federal court had authority to adjudicate the claim in suit" (quoting Steel Co., 523 U.S. at 91)).

Here, there can be no doubt the federal district court has original subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), commonly known as the "diversity jurisdiction" provision. The parties are citizens of different states, and the amount in controversy exceeds $75,000, which satisfies 28 U.S.C. § 1332(a)(1). Cf. Grinnell Corp. v. Hackett, 475 F.2d 449, 453 (1st Cir. 1973) ("Justiciability is . . . distinguishable from subject matter jurisdiction, which was here properly not disputed.").

We have recognized a formulation of justiciability that relates to whether there is "a lack of judicially discoverable and manageable standards for resolving [the case]." Id. (quoting Baker v. Carr, 369 U.S. 186, 217 (1962)). Thus, whether the elements of the legal claims in dispute have been satisfied -- that is, whether the claims are cognizable and thus justiciable -- is another matter to which we now turn.

Throughout trial, C&W contended that it terminated Rinsky because he moved to Massachusetts without first receiving proper approval to transfer his employment to the C&W of Massachusetts ("C&W of MA") office in Boston. C&W argues that the NYCHRL did not apply to Rinsky's claims because he lived and worked in Massachusetts at the time C&W terminated him, and thus the impact of the decision was felt only outside New York City and not within the reach of the statute. We disagree.

The highest court in New York, the Court of Appeals, has held that when determining whether plaintiffs can bring a claim pursuant to the NYCHRL, the question is whether the impact of an alleged discriminatory decision was felt within New York City. Hoffman v. Parade Publ'n, 933 N.E.2d 744, 746 (N.Y. 2010); see also Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 182–83 (2d Cir. 2016); Robles v. Cox & Co., 841 F. Supp. 2d 615, 624 (E.D.N.Y. 2012). "[T]he impact requirement does not exclude all nonresidents from its protection; rather, it expands those protections to

nonresidents who work in the city, while concomitantly narrowing the class of nonresident plaintiffs who may invoke its protection." Hoffman, 933 N.E.2d at 747. In other words, the impact requirement "confines the protections of the NYCHRL to those who are meant to be protected -- those who work in the city." Id. In contrast, the fact that the alleged discriminatory action occurs in New York City is not enough to support a claim under the NYCHRL; "although the locus of the decision to terminate may be a factor to consider, the success or failure of an NYCHRL claim should not be solely dependent on something as arbitrary as where the termination decision was made." Id.

### b. Impact Under the NYCHRL.

In light of these tenets, the present claim appears fully justiciable. It is clear that Rinsky's residence in Massachusetts does not either preclude him from bringing a claim under the NYCHRL or support the conclusion that the impact of his termination was not felt in New York City. See id. Nor does the fact that he teleworked from Massachusetts. C&W asserts, unpersuasively, that "the only rational interpretation of the jury's verdict is that it rejected C&W's theory of job abandonment and instead credited Rinsky's argument that C&W granted his request (either explicitly or implicitly) to be transferred to C&W of MA." Rather, the evidence showed that Rinsky performed work at C&W's New York City office for twenty-seven years. Believing he had permission to

work from Massachusetts, Rinsky began to perform his work for the New York City office remotely from his Massachusetts home. Several weeks later, C&W terminated him, purportedly for refusing to conduct his work while physically present in the New York City office. We agree with the post-trial observation of the presiding judge that a "plausible reading of the verdict and the evidence is that [C&W] allowed [Rinsky] to believe that he would be able to transfer to Massachusetts, but never officially authorized or intended to authorize the transfer, thus creating a pretext to fire him after he moved." Therefore, Rinsky was "continuously employed in New York City, despite the fact that he worked remotely from Massachusetts in the days preceding his termination."

The NYCHRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2nd Cir. 2013) (quoting Restoration Act § 7 (amending N.Y.C. Admin. Code § 8-130)). It would create a significant loophole in the statutory protection that the New York Court of Appeals deemed was provided to non-resident employees, Hoffman, 933 N.E.2d at 746, if by the chicanery of misleading or lulling employees into working remotely from outside New York City before terminating them, an employer could immunize itself from liability. Surely, in enacting the NYCHRL, the New York City Council did not countenance that such stratagems in service of

prohibited discrimination would be beyond the reach of the statute. In short, the district court did not err in determining that the NYCHRL applies.[7]

We find instructive the analysis presented in Wexelberg v. Project Brokers LLC, No. 13 Civ. 7904, 2014 WL 2624761 (S.D.N.Y. 2014). In that case, the plaintiff had worked in the defendant's New York City office for six weeks, followed by five weeks of working remotely for the New York City office from his New Jersey home. Id. at *10. The court determined that the plaintiff could bring claims under the NYCHRL and noted that "this arrangement may present quite a different scenario from the caselaw that addresses a claim by an employee stationed at an out-of-state office." Id. at *11; contra Hoffman, 933 N.E.2d at 745-47 (denying NYCHRL protection to a resident of Georgia working for defendant's Atlanta office when his contacts with New York City were limited to communications and occasional personal visits to the New York City office). The Wexelberg court was particularly concerned about the "form of victimization" that would result from "the simple stratagem of directing a targeted employee to do his work at home rather than at the New York [City] office where he normally works, and then terminating him a few days or weeks later" in order to

_____

[7] In view of our holding, we need not reach Rinsky's alternative argument that C&W should be judicially estopped from contending that the NYCHRL does not apply.

circumvent the NYCHRL. Wexelberg, 2014 WL 2624761, at *11. C&W argues that Wexelberg is distinguishable because C&W did not direct Rinsky to move to Boston and instead Rinsky initiated his own relocation. Be that as it may, the same concerns present in Wexelberg are still at play here.

**B. Jury Instructions.**

C&W contends that the district court committed reversible error in its causation and punitive damages instructions. We do not discern merit in these claims.

**1. Causation.**

C&W argues that the district court failed to instruct the jury properly regarding the substantive differences between the NYCHRL and the NYSHRL and that this failure prejudiced C&W. Specifically, C&W contends that the instruction incorrectly captured the applicable law because it included the lower standard of causation pursuant to the NYCHRL -- that age must be a substantial or motivating factor in a plaintiff's termination -- which C&W contends is inapplicable to this action. Instead, according to C&W, the district court should have exclusively denoted the stricter "but-for" standard under the NYSHRL. Moreover, C&W contends that, regardless of whether it was proper for the district court to address the NYCHRL and NYSHRL claims in tandem, the phraseology of the instruction still prejudiced C&W by collapsing the distinction between the NYCHRL and NYSHRL.

The relevant portion of the jury instruction is as follows:

> It is unlawful for an employer or its agents to terminate an employee based on his age or because of a disability. In this case, in order for the plaintiff to recover, he must prove by a preponderance of the evidence that his age, a disability, or both was a determining or substantial factor in Defendant Cushman & Wakefield's decision to terminate him. . . .
>
> Age and/or disability are determining factors if Plaintiff would not have been terminated but for his age and/or disability. . . .
>
> Evidence of pretext standing alone may but not need support an inference of unlawful bias. Therefore, if the plaintiff has persuaded you that the defendant's explanation for terminating the plaintiff is false, you may but are not required to infer that defendant is covering up a discriminatory intent, motive, or state of mind, although plaintiff must still show that age or disability was a substantial factor.

Additionally, C&W complains of the question posed in the special verdict form asking whether Rinsky "prove[d] by a preponderance of the evidence that his age was a substantial factor in [C&W's] decision to terminate him?"

Claims of preserved instructional error are reviewed under a split standard. Franchina v. City of Providence, 881 F.3d 32, 55 (1st Cir. 2018). "Questions as to whether jury instructions capture the essence of the applicable law are reviewed de novo, while questions as to whether the court's choice of phraseology in crafting its jury instructions is unfairly prejudicial are reviewed for abuse of discretion." Id. (citing DeCaro v. Hasbro, Inc., 580 F.3d 55, 61 (1st Cir. 2009)). The abuse of discretion

- 24 -

analysis "focuses on whether the instruction 'adequately illuminate[d] the law applicable to the controverted issues in the case without unduly complicating matters or misleading the jury.'" Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 47 (1st Cir. 2015) (quoting Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 175 (1st Cir. 1998)).

As we have discussed, the NYCHRL -- not the NYSHRL -- is applicable in this action. The jury instruction language quoted above includes the essence of applicable law -- that is, that a plaintiff must "establish that there was a causal connection between [the] protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for [his] termination was pretextual or 'motivated at least in part by an impermissible motive.'" Russo, 972 F. Supp. 2d at 456 (citing Brightman, 970 N.Y.S.2d at 792). Courts interpreting claims under the NYCHRL have rejected the imposition of the heightened "but-for" causation standard governing NYSHRL actions. See, e.g., Calhoun v. Cnty. of Herkimer, 980 N.Y.S.2d 664, 667-68 (2014) (stating that plaintiff's burden of establishing causation is showing that "the defendant was motivated at least in part by an impermissible motive" (quoting Brightman, 970 N.Y.S.2d at 789)); Taylor v. Seamen's Soc. For Children, No. 12 Civ. 3713, 2013 WL 6633166, at *23 (S.D.N.Y. Dec. 17, 2013) (finding that the "but-for" causation standard did not apply to claim under the NYCHRL);

- 25 -

Douglas, 2012 WL 4378109, at *3 ("[T]he Court's analysis of the claims brought pursuant to the . . . NYSHRL diverges from its analysis of the claim brought pursuant to the NYCHRL . . . [C]ourts . . . have found that NYCHRL claims remain subject to the standard that requires age to be only a 'motivating factor' for the adverse employment action, rather than the 'but-for' cause.") (quoting Colon, 2011 WL 6092299, at *5) (internal quotation marks omitted). This is because NYCHRL claims are viewed under a more liberal standard than New York state and federal claims. See Douglas, 2012 WL 4378109, at *3; Holleman v. Art Crating Inc., No. 12 Civ. 2719, 2014 WL 4907732 at *22 (E.D.N.Y. Sept. 30, 2014) (citing Mihalik, 715 F.3d at 109–10); see also Sass v. MTA Bus Co., 6 F. Supp. 3d 238, 243 (E.D.N.Y. 2014) (finding no error in instructing jury on the NYCHRL claim that plaintiff had to prove that "one or more of his protected activities played an important role in defendant's decision to terminate plaintiff," and that "plaintiff's participation in protected activities were more likely than not a motivating factor in defendant's termination of plaintiff"). C&W does not dispute that a "motivating factor" instruction was correct under the NYCHRL. We conclude that the jury instructions did not fail to "capture the essence of the applicable law." Franchina, 881 F.3d at 55.

If anything, the district court's instructions provided a higher burden of proof than was necessary in stating that "[a]ge

- 26 -

and or disability are determining factors if [Rinsky] would not have been terminated <u>but for</u> his age and/or disability." Such error was not prejudicial. Because the more lenient "substantial factor" standard is appropriate under the NYCHRL, the inclusion of the stricter "but-for" standard language as well did not prejudice C&W. Where Rinsky's NYCHRL claim prevailed, even with an instruction that included the language of the stricter standard, any error in the instruction was harmless to C&W. <u>See</u> 28 U.S.C. § 2111.

"Jury instructions are intended to furnish a set of directions composing, in the aggregate, the proper legal standards to be applied by lay jurors in determining the issues that they must resolve in a particular case." <u>Teixeira</u> v. <u>Town of Coventry</u>, 882 F.3d 13, 16 (1st Cir. 2018) (quoting <u>United States</u> v. <u>DeStefano</u>, 59 F.3d 1, 2 (1st Cir. 1995)). Here, the instructions, in aggregate, describe the appropriate substantial factor standard. Thus, "[g]iven the satisfactory nature of the district court's jury instructions as a whole, we discern no merit in the appellant's claims of error." <u>Id.</u> at 15.

Finally, we address C&W's contention that the court should have delivered C&W's requested jury instruction:

> Plaintiff must prove, by a preponderance of the evidence, that his age . . . was the "but-for" cause of defendant's decision to terminate his employment. The issue in an action for age . . . discrimination is not whether defendant acted with good cause, but whether its

- 27 -

business decision would have been made but for a discriminatory motive.

"When . . . a party assigns error to the failure to give a requested instruction, the threshold inquiry is whether the requested instruction was correct as a matter of law." Shervin, 804 F.3d at 47 (citing Elliott v. S.D. Warren Co., 134 F.3d 1, 6 (1st Cir. 1998)). "If that threshold is met, the challenger must make two subsequent showings: first that the proposed instruction is 'not substantially incorporated into the charge as rendered' and second that it is 'integral to an important point in the case.'" Franchina, 881 F.3d at 55-56 (quoting White v. N.H. Dept. of Corr., 221 F.3d 254, 263 (1st Cir. 2000)). Here, as discussed above, the applicable standard for the NYCHRL claims is whether age was a substantial or motivating factor, not whether Rinsky's termination would have occurred but for a discriminatory motive.[8] C&W's proposed instruction thus fails the threshold test, and we discern no error in the district court's decision not to use C&W's suggested instruction.

## 2. Punitive Damages.

C&W contends that the district court's punitive damages instructions to the jury constituted error for two reasons. First,

---

[8] There is thus no merit to C&W's complaint that the question posed in the special verdict form -- asking whether Rinsky "prove[d] by a preponderance of the evidence that his age was a substantial factor in [C&W's] decision to terminate him?" -- was in error.

- 28 -

according to C&W, the NYCHRL does not apply, and thus the jury should not have considered punitive damages that are explicitly authorized under that statute in appropriate cases.  However, as we have discussed, the NYCHRL does apply to this action, and so the district court properly permitted the jury to consider whether to award punitive damages.

Second, C&W argues that, even assuming arguendo that consideration of punitive damages under the NYCHRL was proper, the district court erred in not instructing the jury that Rinsky had to prove his entitlement to punitive damages by "clear and convincing evidence."  The district court instructed the jury on punitive damages as follows:

> Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages.  A damages award must be based on just and reasonable inferences from the evidence.
>
> . . .
>
> In addition to awarding damages to compensate the plaintiff, you may but are not required to award plaintiff punitive damages if you find the acts of the defendant were wanton and reckless or malicious.  The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant and thereby discourage the defendant and others from acting in a similar way in the future.  An act is malicious when it is done deliberately with knowledge of the plaintiff's rights and with intent to interfere fear [sic] with those rights.  An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety, and rights of others.  If you find that the defendant's acts were not wanton or reckless or malicious, you may not award

punitive damages.  On the other hand, if you find the defendant's acts were wanton or reckless or malicious, you may award punitive damages.

After the trial concluded and briefing on the post-trial motions was completed, "consistent with the New York City Council's directive to construe the New York City Human Rights Law liberally," Chauca v. Abraham, 89 N.E.3d 475, 477 (N.Y. 2017), the New York Court of Appeals rejected the heightened level of culpability set forth under Title VII of the Civil Rights Act, that had been imposed by Second Circuit precedent.  Id.[9]  Rather, it ruled that the appropriate, common-law-derived standard, as articulated in Home Ins. Co. v. Am. Home Prod. Corp., 550 N.E.2d 930, 934–35 (N.Y. 1990), was "whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless so as to amount to such disregard.'"  Chauca, 89 N.E.3d at 481 (quoting Home Ins. Co., 550 N.E.2d at 932).  Thus, as it turned out, the jury instruction challenged in the instant appeal largely tracked the language set forth by the New York Court of

---

[9]  In Farias v. Instructional Sys., Inc., the Second Circuit ruled the federal Title VII standard applies to claims for punitive damages under the NYCHRL.  259 F.3d 91, 101 (2d Cir. 2001).  Therefore, according to the Farias court, "the standard in the Second Circuit for liability for punitive damages under the NYCHRL required a showing that the defendant had engaged in intentional discrimination and had done so with malice or with reckless indifference to the protected rights of the aggrieved individual." Chauca v. Abraham, 841 F.3d 86, 91 (2d Cir. 2016) (summarizing the holding in Farias).

Appeals, and on appeal C&W does not contend that the standard to be used for determining liability for punitive damages as charged by the judge here was in error.  Rather, C&W argues that the punitive damages instruction was in error because it did not reflect the plaintiff's burden of offering "clear and convincing evidence" in order to obtain punitive damages, which, according to C&W, was required under New York law.

We are unpersuaded by this argument.  First, to provide context, we note that the appropriate burden of proof for punitive damages generally is a matter of debate within New York's courts.  See N.Y. Prac., Com. Litig. In New York State Courts § 49:7 (4th ed. 2018).  Indeed, the New York Pattern Jury Instructions "does not include a statement of the standard of proof that must be satisfied for an award of punitive damages because the Appellate Divisions are split on the issue" of whether "clear and convincing evidence" or "preponderance of the evidence" is the appropriate standard.  N.Y. Pattern Jury Inst. –Civil 2:278 (Comment, Dec. 2018 Update).[10]  New York's highest court has not addressed the split.  Writing in 1997, then Judge Sotomayor observed that "[t]he

_____

[10] For entitlement to punitive damages, the Second Department requires that the "clear and convincing evidence" standard be charged, the First Department requires "clear, unequivocal and convincing evidence", and the Fourth Department holds that proof by "a preponderance of the evidence" is sufficient.  See N.Y. Pattern Jury Inst. –Civil 2:278 (Comment, Dec. 2018 Update) (citing cases).

- 31 -

federal and state court cases on the question are mired in a morass of ambiguity." Greenbaum v. Svenska Handelsbanken, N.Y., 979 F. Supp. 973, 981–82 (S.D.N.Y. 1997). Surveying the landscape, including New York Court of Appeals and Second Circuit jurisprudence, the court in Greenbaum determined that the appropriate standard is "preponderance of the evidence." Id. at 982–83.[11] The relevant terrain has not changed since that decision. Were the issue before us the question of the appropriate burden of proof for punitive damages generally, we might seriously consider certifying the question to New York's highest court. Cf. Chauca, 841 F.3d at 93 (certification by Second Circuit to the New York Court of Appeals on issue of standard of liability for awarding punitive damages under the NYCHRL); see also In re Engage, Inc., 544 F.3d 50, 53–58 (1st Cir. 2008) (certification by First Circuit of question to the Massachusetts Supreme Judicial Court). Though the parties have not requested certification, we would not be precluded from so doing on our own. See Chauca, 841 F.3d at 93.

---

[11] The Greenbaum court noted that in an 1874 negligence case, the New York Court of Appeals held that liability for punitive damages needed to be "clearly established." Cleghorn v. N.Y. Cent. & H.R.R.R., 56 N.Y. 44, 47–48 (1874). However, "a significantly more recent Court of Appeals decision recommends the precise opposite result: that the preponderance standard applies to punitive damages determinations." Greenbaum, 979 F. Supp. at 978 (citing Corrigan v. Bobbs-Merrill Co., 126 N.E. 260, 263 (N.Y. 1920)).

The issue before us, however, is a narrower one: is clear and convincing evidence required to award punitive damages under the NYCHRL, which does not statutorily specify the quantum of proof?  As a Boston-based federal court, we are in essence asked to make an informed prophecy as to the standard that would be articulated by the New York Court of Appeals if confronted with that question.  "[A] federal court sitting in diversity should not simply throw up its hands, but, rather, should endeavor to predict how that court would likely decide the question."  Butler v. Balolia, 736 F.3d 609, 613 (1st Cir. 2013); see also Travelers Ins. Co. v. 633 Third Assoc., 14 F.3d 114, 119 (2d Cir. 1994).  In making such a determination, "the federal court should consult the types of sources that the state's highest court would be apt to consult, including analogous opinions of that court, decisions of lower courts in the state, precedents and trends in other jurisdictions, learned treatises, and considerations of sound public policy."  Butler, 736 F.3d at 613.  In our view, the road to the decision is well-lit, with sign posts that guide us to our determination that under the NYCHRL, clear and convincing evidence is not the quantum of proof for punitive damages.  Even if we were to assume arguendo that the New York Court of Appeals would apply the "clear and convincing" evidence standard to punitive damages generally, for the reasons discussed below, our conclusion

regarding the NYCHRL would not change.  The district court thus was correct in declining to so charge.

    We turn for resolution of the burden of proof question before us to the New York Court of Appeals decision that is now the touchstone of our understanding for punitive damages under the NYCHRL -- Chauca, 89 N.E.3d 475.  There, as we have noted, the Court of Appeals rejected as "contrary to the intent of the [New York City] Council" the application of the stringent standards imposed by Title VII for punitive damages.  The court explained:

> [I]n 2005, subsequent to Farias, the City Council passed the Restoration Act, amending the Administrative Code of the City of New York to ensure that "[t]he provisions of [the NYCHRL] shall be construed liberally . . . regardless of whether federal or New York state civil and human rights laws . . . have been so construed" (Administrative Code § 8-130 [a]).  Expressing concern that the NYCHRL was being too strictly construed, the amendment established that similarly worded state or federal statutes may be used as interpretive aids only to the extent that the counterpart provisions are viewed "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise," and only to the extent that those state or federal law decisions may provide guidance as to the "uniquely broad and remedial purposes" of the local law (Local Law No. 85 [2005] of City of NY §§ 1, 7).  In a report on the amendments (see Rep of Comm on Gen Welfare, Aug. 17, 2005, 2005 NY City Legis Ann at 537), the Committee on General Welfare rejected prior reasoning by this Court that the City Council "would need to amend the City HRL to specifically depart from a federal doctrine if it wanted to do so" (Bennett v. Health Mgt. Sys., Inc., 936 N.Y.S.2d 112 [2011]; McGrath v. Toys "R" Us, Inc., 821 N.E.2d 519 [2004]).  As a result, this Court has acknowledged that all provisions of the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is

- 34 -

reasonably possible" (Albunio v. City of New York, 947 N.E.2d 135 [2011]).

Chauca, 89 N.E.3d at 90. Because the New York Court of Appeals has determined that the standard for recovering punitive damages under the NYCHRL should be less demanding than the federal Title VII standard, C&W's contention that the NYCHRL mandates a burden of clear and convincing evidence -- a burden that is higher than even the rejected Title VII standard -- fails under the weight of precedent and logic. It contradicts the reasoning and holding of the Chauca court. In short, the suggested instruction was wrong as a matter of law, and the district court did not err in rejecting it. See Shervin, 804 F.3d at 46-48.

## C. **Sufficiency of the Evidence.**

C&W contends that the district court erred "by rejecting C&W's post-verdict challenges to awards of compensatory and punitive damages that were unsupported and against the weight of the evidence." C&W argues that Rinsky fell far short of meeting his burden to show that age discrimination was the "but-for" cause of termination. As discussed supra pp. 18-23, however, the NYCHRL does apply, and Rinsky needed only to show that age discrimination was a "substantial factor" in his termination. We thus review the district court's denial of the post-verdict motions using the "substantial factor" standard. We affirm the district court's

denial of the motion for JMOL under de novo review and its denial of the motion for a new trial under abuse-of-discretion review.

We review de novo the district court's post-verdict denial of the Federal Rule of Civil Procedure 50 motion for JMOL, "tak[ing] the facts in the light most favorable to the verdict." Jennings v. Jones, 587 F.3d 430, 438 (1st Cir. 2009); see also Kennedy v. Town of Billerica, 617 F.3d 520, 527 (1st Cir. 2010). "We reverse the district court's denial of such motions if the jury would not have a legally sufficient evidentiary basis for its verdict." Kennedy, 617 F.3d at 527 (quoting Jennings, 587 F.3d at 436). "This review is weighted toward preservation of the jury verdict, which stands unless the evidence was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it." Crowe v. Bolduc, 334 F.3d 124, 134 (1st Cir. 2003) (citing Primus v. Galgano, 329 F.3d 236, 241–42 (1st Cir. 2003)); see also Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010); Sanchez v. P.R. Oil Co., 37 F.3d 712, 716 (1st Cir. 1994).

We review for abuse of discretion the district court's post-verdict denial of the Federal Rule of Civil Procedure 59 motion for a new trial. Jennings, 587 F.3d at 438 (citing Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989) and Transamerica Premier Ins. Co. v. Ober, 107 F.3d 925 (1st Cir. 1997)).

> Appellate review of a district court's disposition of a Rule 59(a) motion is even more circumscribed [than appellate review of a denial of a motion for JMOL]; a district court may set aside a jury's verdict and order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice. And, moreover, a trial judge's refusal to disturb a jury verdict is further insulated because it can be reversed solely for abuse of discretion.

Sanchez, 37 F.3d at 717 (internal citations omitted) (citing Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st Cir. 1982); Freeman v. Package Mach. Co., 865 F.2d 1331, 1334 (1st Cir. 1988); Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988). Abuse of discretion occurs "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988). "[W]e will reverse a judge's decision not to grant a motion for a new trial 'only if the verdict is so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice.'" Gutierrez-Rodriguez, 882 F.2d at 558 (quoting Levesque v. Anchor Motor Freight, Inc., 832 F.2d 702, 703 (1st Cir. 1987)).

C&W has failed to meet its burden of showing either that there was no legally sufficient basis for the verdict or that the

district court abused its discretion.  We thus affirm the district court's denial of JMOL and the motion for a new trial.

As we have noted, C&W contends that Rinsky was fired because he moved to Boston without its approval, and then refused to return to New York when C&W asked him to do so.  C&W argues that "although Rinsky premised his entire case on the notion that C&W created a 'pretext' to terminate him, there is not one iota of evidence in the record to explain why C&W would have been motivated to do so."  C&W further contends that "[t]here also was no direct evidence in the record" to show age discrimination and provides a litany of reasons as to why it would not have made sense for Rinsky's age to motivate his termination, from his "excellent performance reviews" to his experience with the AS/400 system and the age of his replacement.  C&W, in sum, asserts that the lack of direct evidence on the record plainly showing age discrimination creates an evidentiary insufficiency, entitling C&W either to JMOL or a new trial.

C&W, however, uses the wrong standard.  As the district court noted in its order and memorandum denying C&W's motion, the NYCHRL is "uniquely broad and protective," allowing for the "use of circumstantial evidence, by disproving Defendant's proffered non-discriminatory explanation, and then relying on appropriate inferences."  The district court followed the standard as summarized by the Second Circuit in Mihalik, 715 F.3d at 108–09:

In amending the NYCHRL, the City Council expressed the view that the NYCHRL had been "construed too narrowly" and therefore "underscore[d] that the provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of New York state or federal statutes." Restoration Act § 1. To bring about this change in the law, the Act established two new rules of construction. First, it created a "one-way ratchet," by which interpretations of state and federal civil rights statutes can serve only "'as a floor below which the City's Human Rights law cannot fall.'" Loeffler, 582 F.3d [268,][] 278 [(2d 2009)] (quoting Restoration Act § 1). Second, it amended the NYCHRL to require that its provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." Restoration Act § 7 (amending N.Y.C. Admin. Code § 8-130).

While noting that the Restoration Act, amending the NYCHRL, set forth a "one-way ratchet," such that the federal standard is the floor, the Mihalik court also observed that "[i]t is unclear whether, and to what extent, the McDonnell Douglas burden-shifting analysis [used for federal age discrimination claims] has been modified for NYCHRL claims." Id. at 110 n.8; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The answer to this question was given in 2016 by New York City's Local Law No. 35, amending Administrative Code § 8-130 "to provide additional guidance to the development of an independent body of jurisprudence for the [NYCHRL] that is maximally protective of civil rights in all circumstances." N.Y.C. Local L. 35 of 2016 § 1 (Mar. 28, 2016) (codified at N.Y.C. Admin. Code § 8-130). The

- 39 -

amendment ratified three decisions under the NYCHRL, including Bennett v. Health Mgmt. Sys., Inc., 936 N.Y.S.2d 112, 116 (App. Div. 2011). It explained that each of the cases "correctly understood and analyzed the liberal construction requirement" of the NYCHRL and "developed legal doctrines accordingly that reflect the broad and remedial purposes of [the NYCHRL]." N.Y.C. Admin. Code § 8-130. See also Morse v. Fidessa Corp., 84 N.Y.S.3d 50, 52–53 (App. Div. 2018) (quoting Restoration Act and March 8, 2016 Committee on Civil Rights report accompanying Local Law 35). Noting that different evidentiary frameworks may be appropriate for different kinds of cases, Bennett explained that to establish a claim for discrimination under the NYCHRL, a plaintiff must satisfy either the McDonnell Douglas standard, or a lesser burden in cases analyzing liability under a mixed motives theory. See Bennett, 936 N.Y.S.2d at 117–21 (comparing various burdens of proof in discrimination claims). Rinsky's age discrimination claim satisfies both.

Discriminatory intent can be difficult to prove. In Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000), the Supreme Court held that the McDonnell Douglas framework is applicable to federal age discrimination claims ("Reeves/McDonnell Douglas"), setting forth when it is appropriate for a jury to infer discrimination if it declines to credit the employer's explanation for an adverse employment action. See Reeves, 530 U.S. at 143–

- 40 -

44.    "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive." Id. at 147. A jury may infer unlawful discrimination where there is (1) a prima facie case of discrimination and (2) "sufficient evidence to find that the employer's asserted justification is false." Id. at 148. This does not mean "that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability." Id. Where, for example, "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue . . .", "an employer would be entitled to judgment as a matter of law." Id.

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . .

Id. at 148–49. In such cases, a court should not order JMOL for the defendant absent sufficient evidence "to conclusively demonstrate that [the employer's] actions were not discriminatorily motivated." Id. at 153 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 580 (1978)).

As discussed above, one way for a plaintiff to establish discrimination under the NYCHRL is to fulfill the requirements of the Reeves/McDonnell Douglas criteria.  Here, the first element of the Reeves/McDonnell Douglas inquiry is satisfied, as there is sufficient evidence on the record for the jury to find that Rinsky met his burden of showing a prima facie case of discrimination.  A prima facie case of discrimination under federal law requires that:

> (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'

Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996)) (applying the standard for a prima facie case of racial discrimination by an employer, set forth in McDonnell Douglas, 411 U.S. at 793, to an age discrimination case); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69 (2d Cir. 2005).  At 63 years old, Rinsky was indisputably a member of the protected class.  Both parties, moreover, agree that Rinsky was qualified for his job, receiving "excellent" performance reviews, and that C&W terminated him.  The fourth requirement of a prima facie showing is met by substantially the same record evidence as that of the finding that C&W's non-discriminatory justification was false, including C&W's

replacement of Rinsky with a "substantially younger" employee, fifteen years his junior, see O'Connor, 517 U.S. at 313, and buttressed by substantially the same record evidence discussed below supporting the finding that C&W's non-discriminatory justification was false. We conclude that Rinsky established a prima facie case of age discrimination.

The second element of the Reeves/McDonnell Douglas inquiry is also satisfied, as there is sufficient evidence on the record for the jury to find that C&W's justification was false. Making inferences most favorable to the plaintiff, a reasonable jury could find from the evidence of record that Rinsky had long worked remotely for C&W, C&W knew of Rinky's intent to move to Boston, C&W treated other employees requesting transfers differently, and C&W never warned Rinsky that his move to Boston could result in termination. Rinsky was the oldest member of his department, and C&W replaced Rinsky with a significantly younger employee. Lastly, the record evidence shows that C&W began formulating a plan to replace Rinsky prior to his move to Boston. The district court thus concluded that "the evidence presented at trial strongly suggested that Defendant's asserted reason for firing Plaintiff was false." The district court found that the evidence suggested "Defendant allowed Plaintiff to think that he had permission to transfer, waited until he moved to Boston and his replacement was trained, and then used the move as a pretense

to fire him."  We conclude that the district court's finding was not "so clearly against the law or the evidence" and therefore not an abuse of discretion.  Gutierrez-Rodriguez, 882 F.2d at 558 (quoting Levesque, 832 F.2d at 703).

     With the first two elements met, we then must examine, as the district court rightly stated, "whether the record 'conclusively revealed' an alternative, non-discriminatory reason for the employer's decision."  Reeves, 530 U.S. at 148–49.  On C&W's side of the ledger, the record does indicate that Reid was close to Rinsky in age, Rinsky was skilled at his position, and senior management had concerns about the number of employees working remotely.  However, nothing on the record conclusively shows that C&W's motivation for firing Rinsky was non-discriminatory.  The district court noted "the lack of any indication in the record of an obvious, alternative, non-discriminatory explanation for Plaintiff's firing" and found "the jury permissibly inferred that Defendant's continued insistence that it fired Plaintiff for moving without permission was covering up an impermissible motive, even where there was little direct evidence of age discrimination."  Considering both C&W's burden to show conclusively the non-discriminatory reason for Rinsky's termination and our obligation to weight our review of the record "toward preservation of the jury verdict," we conclude that the record provides an insufficient basis for us to overturn the

- 44 -

district court's denial of JMOL.  Crowe, 334 F.3d at 134.  The district court, therefore, did not abuse its discretion, as the evidence substantially supports its finding that Rinsky satisfied the age discrimination analysis under Reeves/McDonnell Douglas.

As we have noted, apart from the more stringent federal McDonnell Douglas framework, a plaintiff may also establish a claim of age discrimination in violation of the NYCHRL under the less onerous mixed motive framework, as the district court recognized.[12] The difference in analysis has been well articulated in a recent age discrimination case arising under the NYCHRL:

> The McDonnell Douglas framework and the mixed motive framework diverge only after the plaintiff has established a prima facie case of discrimination . . . and the defense has responded to that prima facie case by presenting admissible evidence of "legitimate, independent, and nondiscriminatory reasons to support its employment decision" (Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305, 786 N.Y.S.2d 382, 819 N.E.2d 998 [2004] [internal quotation marks omitted]).

---

[12]  The judge stated:

Alternatively, a plaintiff may also prevail in a NYCHRL action "if he or she proves that unlawful discrimination was one of the motivating factors, even it was not the sole motivating factor for an adverse employment decision." Melman v. Montefiore Med Ctr., 989 A.D.3d 107, 127 (N.Y. App. Div. 2012).  "If a plaintiff can prevail on a 'mixed motive' theory, it follows that he or she need not prove that the reasons proffered by the employer for the challenged action was actually false or entirely irrelevant." Id.  Rather, the plaintiff must demonstrate that the challenged action was "more likely than not based in whole or in part on discrimination." Id. (quoting Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009)).

> At that point, under McDonnell Douglas, the burden shifts to the plaintiff to produce evidence tending to "prove that the legitimate reasons proffered by the defendant were merely a pretext for discrimination." (id.). By contrast, under the mixed motive analysis, the plaintiff may defeat the defendant's evidence of legitimate reasons for the challenged action by coming forward with evidence from which it could be found that "unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for [the] adverse employment decision" (Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 127, 946 N.Y.S.2d 27 [1st Dept.2012]).

Hamburg v. NYU Sch. of Med., 62 N.Y.S.3d 26, 32 (App. Div. 2017).

We have already concluded that the district court did not err in concluding that Rinsky established at trial a prima facie case of discrimination. We have further concluded that the district court did not abuse its discretion in finding that the trial evidence "strongly suggested that [C&W]'s asserted reason for firing [Rinsky] was false." Thus, under a mixed motive theory of liability, the jury's verdict could also be sustained. In short, whether analyzed under the McDonnell Douglas framework or the mixed motive framework, we affirm the district court's denials of C&W's motions for JMOL and a new trial.

Finally, we are mindful of the "maximally protective" reach of the NYCHRL in addressing claims of discrimination. N.Y.C. Admin. Code § 8-130. "The independent analysis of NYCHRL claims must be targeted to understanding and fulfilling the NYCHRL's uniquely broad and remedial purposes, which go beyond those of counterpart state and federal civil rights laws." Id. at Case

Notes ¶3.  The New York City government was clear as to the legislative intent of the NYCHRL: "it is the intention of the Council that judges interpreting the City's Human Rights Law are not bound by restrictive state and federal rulings and are to take seriously the requirement that this law be liberally and independently construed."  David N. Dinkins, Mayor, New York City, Remarks at Public Hearing on Local Laws (June 18, 1991) (on file with Committee on General Welfare) available at http://antibiaslaw.com/sites/default/files/all/LL39LegHist-Mayor.pdf.  As we have noted, that commitment has only been strengthened by the two rules of construction set forth in the Restoration Act in 2005 and by the most recent amendment in 2016.  Here, the district court first reviewed C&W's motions for JMOL and a new trial under the more restrictive federal employment law.  Finding first that the record sufficiently supported the jury's finding of age discrimination under this more restrictive standard, the district court then found the jury's verdict to be supported under the more "liberally . . . construed" NYCHRL.  We agree.

### III.

We uphold the district court's ruling denying C&W's motion for JMOL or a new trial, and we reject C&W's other assignments of error.  Therefore, we **affirm** the judgment of the district court.